**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
            *Plaintiff-Appellee,*

v.

DAVID ANDREW GONZALEZ,
            *Defendant-Appellant.*

No. 03-50414

D.C. No.
CR 02-0766 SVW

OPINION

Appeal from the United States District Court
for the Central District of California
Stephen V. Wilson, District Judge, Presiding

Argued and Submitted
October 8, 2004—Pasadena, California

Filed December 1, 2005

Before: Harry Pregerson, A. Wallace Tashima, and
Richard A. Paez, Circuit Judges.

Opinion by Judge Tashima

15611

**COUNSEL**

Firdaus Dordi, Deputy Federal Public Defender, Los Angeles, California, for the defendant-appellant.

Erik M. Silber, Assistant United States Attorney, Los Angeles, California, for the plaintiff-appellee.

**OPINION**

TASHIMA, Circuit Judge:

David Gonzalez appeals his conviction following a conditional guilty plea to being a deported alien found in the United States without permission, in violation of 8 U.S.C. § 1326. Gonzalez contends that the district court should have granted his motion to dismiss the indictment because it was based on prior deportations that violated his due process rights. Gonzalez argues that the deportations impermissibly applied 8 U.S.C. § 1228(b)(5) retroactively, thus depriving him of the ability to seek discretionary relief from deportation under 8 U.S.C. § 1182(h). Gonzalez further argues that his waiver of judicial review was invalid and that he suffered prejudice because he could have asserted plausible grounds for relief from deportation. We have jurisdiction over the appeal pursuant to 28 U.S.C. § 1291, and we affirm.

## I. BACKGROUND

Gonzalez was indicted on one count of being an alien found in the United States after having been deported on January 18, 2000, and December 10, 1997, in violation of 8 U.S.C. § 1326. His motion to dismiss the indictment was denied. Gonzalez then entered a conditional guilty plea, reserving his right to appeal the district court's denial of his motion to dismiss the indictment. The district court accepted the plea and sentenced Gonzalez to a 46-month term of imprisonment and three years of supervised release. Gonzalez filed a timely notice of appeal.

### A. The Underlying Removals

Gonzalez was born in Mexico, in 1976. He entered the United States with his parents illegally when he was three months old. His parents subsequently adjusted their status and became legal permanent residents ("LPR"). They did not

adjust Gonzalez's status at the time because they thought it would be easier to adjust it later. Gonzalez has six siblings, all of whom were born in the United States.

When Gonzalez was 14 years old, his parents consulted someone they thought was an attorney about adjusting Gonzalez's status. The attorney told them that his status could not be adjusted because Gonzalez had tattoos. The parents believed the attorney and neither they nor Gonzalez applied to adjust Gonzalez's status.

On January 31, 1994, Gonzalez pled guilty to two counts of second degree robbery in violation of California Penal Code § 211. Gonzalez was sentenced to a three-year term at the California Youth Authority. At the time of his conviction, the offense constituted an aggravated felony, rendering Gonzalez deportable under 8 U.S.C. § 1252(b) (1994).

Subsequently, Congress amended the immigration laws in a number of relevant respects. Subsection 1228(b), as amended by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA") and the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), provides that non-LPR aliens convicted of an aggravated felony are subject to expedited removal, without a hearing before an immigration judge ("IJ"), and are ineligible for any form of relief from removal, including relief under 8 U.S.C. § 1182(h) (also known as § 212(h) waiver). *See* 8 U.S.C. § 1228(b).

On December 8, 1997, the Immigration and Naturalization Service ("INS")[1] served Gonzalez with a Notice of Intent to Issue a Final Administrative Deportation Order. The notice explained that Gonzalez was deportable under 8 U.S.C.

---

[1]Most of the functions of the INS have since been transferred to the newly-created Department of Homeland Security. *See* Homeland Security Act of 2002, Pub. L. No. 107-296, §§ 441, 471, 116 Stat. 2135, 2192, 2205 (2002). For convenience, we refer to the agency involved as the INS.

§ 1227(a)(2)(A)(iii) because he had been convicted of an aggravated felony as defined by 8 U.S.C. § 1101(a)(43). The notice further explained that, under § 1228(b), Gonzalez was deportable without a hearing before an IJ. The notice informed Gonzalez that he could choose to have counsel represent him at removal proceedings at his own expense and "seek judicial review of any final administrative deportation order by filing a petition for review" within 30 days after issuance of the administrative order.

The notice required Gonzalez to indicate whether he chose to contest his deportability based on one of the three following grounds: (1) that he was a citizen or national of the United States, (2) that he was an LPR of the United States, or (3) that he had not been convicted of the criminal offense described in the notice. Gonzalez indicated that he did not wish to contest the deportation order. In doing so, he also signed the following statement:

> I admit the allegations and charge in this Notice of Intent. I admit that I am deportable and acknowledge that I am not eligible for any form of relief from removal. I waive my right to rebut and contest the above charges and my right to file a petition for review of the Final Removal Order.

The next day, an INS service officer issued a Final Administrative Removal Order, finding that Gonzalez was deportable based on his aggravated felony conviction and that he was ineligible for any discretionary relief from removal. Gonzalez was deported the following day.

Gonzalez subsequently reentered the United States and, in February 1999, the INS served him with a Notice of Intent to Reinstate the December 1997 removal order. The notice informed Gonzalez that he was removable as an alien who has illegally reentered after previously having been removed. The notice explained that Gonzalez could contest the INS' deter-

mination by making an oral or written statement to an immigration officer and that Gonzalez had no right to a hearing before an IJ. Gonzalez was removed from the United States in 2000.

## B.   Motion to Dismiss Indictment

In his motion to dismiss the indictment, Gonzalez argued that, although he previously had signed a waiver of his right to appeal his deportations, the waiver was invalid because he was never informed of his eligibility for discretionary relief. Gonzalez argued that § 1228(b)(5) should not apply retroactively to his aggravated felony conviction and that the underlying deportations violated his due process rights because, at the time of his guilty plea, he was eligible for discretionary relief under 8 U.S.C. § 1182(h), Immigration and Nationality Act ("INA") § 212(h).

Gonzalez submitted declarations from his parents and siblings describing the hardship they experienced as a result of his deportation. The declarations described Gonzalez's close relationship with his mother and his siblings, who regarded him as the father-figure of the family. The declarations explained that Gonzalez is now married and has two young children, both United States citizens. Gonzalez also submitted a declaration from an immigration law expert stating that Gonzalez had a plausible ground for relief from deportation under § 1182(h). The district court denied Gonzalez's motion to dismiss the indictment, reasoning that Gonzalez had validly waived his right to appeal the prior deportations and that § 1228(b) applied. Gonzalez then entered his conditional guilty plea.

## II.   ANALYSIS

We review de novo the district court's denial of a motion to dismiss a § 1326 indictment, where the motion is based on alleged due process defects in an underlying deportation pro-

ceeding. *United States v. Muro-Inclan*, 249 F.3d 1180, 1182 (9th Cir. 2001). A defendant may not collaterally attack the validity of an underlying deportation unless he demonstrates that (1) his due process rights were violated by defects in the deportation proceeding, and (2) he suffered prejudice as a result of the defects. 8 U.S.C. § 1326(d); *see United States v. Velasco-Medina*, 305 F.3d 839, 847 (9th Cir. 2002); *United States v. Arrieta*, 224 F.3d 1076, 1079 (9th Cir. 2000).

In addition, an alien is barred from collaterally attacking the validity of an underlying deportation order "if he validly waived the right to appeal that order" during the deportation proceedings. *Muro-Inclan*, 249 F.3d at 1182 (citation omitted). Such a waiver must be "considered and intelligent." *Id.* A waiver is not considered and intelligent when the record contains an inference that the petitioner is eligible for relief from deportation, but the IJ fails to advise the alien of this possibility and give him the opportunity to develop the issue. *United States v. Ubaldo-Figueroa*, 364 F.3d 1042, 1051 (9th Cir. 2004) (holding that the IJ's failure to inform alien that he is eligible for relief from deportation constitutes due process violation where alien establishes prejudice); *United States v. Pallares-Galan*, 359 F.3d 1088, 1096 (9th Cir. 2004); *United States v. Leon-Paz*, 340 F.3d 1003 (9th Cir. 2003).

When the INS commenced removal proceedings against Gonzalez, Gonzalez was ineligible for any discretionary relief because he was a non-LPR alien convicted of an aggravated felony. *See* 8 U.S.C. § 1228(b)(5). At the same time, Gonzalez had no right to a hearing before an IJ; rather, he was subject to removal through the expedited administrative procedure as set forth in 8 C.F.R. § 238.1. *See* 8 U.S.C. § 1228(b)(1)-(4). Gonzalez argues that his waiver of the right to appeal was invalid for two reasons: (1) the § 1228(b)(5) bar against discretionary relief for aggravated felons should not apply because, at the time he pled guilty to the aggravated felony, discretionary relief was available under § 212(h) and application of the bar against discretionary relief therefore

would be impermissibly retroactive; and (2) he was not informed of the availability of such discretionary relief, in violation of his due process rights.

**[1]** In determining whether a statute has an impermissible retroactive effect, we first must determine whether the law "clearly expresses that the law is to be applied retroactively." *Kankamalage v. INS*, 335 F.3d 858, 862 (9th Cir. 2003). The language directing retroactive application "must be 'so clear that it could sustain only one interpretation.' " *Id.* (quoting *INS v. St. Cyr*, 533 U.S. 289, 317 (2001)). If there is no such express statement, we must determine whether the statute would have a retroactive effect. *Id.* A statute has an impermissible retroactive effect when it imposes new negative consequences on past actions "without fair notice, or in a manner that undermines reasonable reliance or upsets settled expectations." *Chang v. United States*, 327 F.3d 911, 920 (9th Cir. 2003).

**[2]** Gonzalez's retroactivity argument rests on the Supreme Court's decision in *St. Cyr*, in which the Court held that IIRIRA's repeal of INA § 212(c) imposed an impermissible retroactive effect on aliens who had relied on the possibility of discretionary relief from deportation under that section in pleading guilty to aggravated felonies.**²** *St. Cyr*, 533 U.S. at 315. At the time that St. Cyr, who was an LPR, entered a guilty plea to a controlled substance violation, he became subject to deportation, and he also became eligible for a discretionary waiver of that deportation under INA § 212(c). Shortly after his conviction, Congress enacted AEDPA and IIRIRA, which, *inter alia*, broadened the set of offenses precluding § 212(c) relief and then repealed § 212(c) altogether. *See id.* at 297 (discussing pertinent effects of AEDPA and IIRIRA).

---

**²**There is no question that § 1228 does not contain express language directing retroactive application. We therefore proceed to the second step of the analysis.

Section 212(c) relief was not available for aliens who served a term of imprisonment of at least five years for an aggravated felony. *See* 8 U.S.C. § 1182(c) (1995). Because of the frequency with which § 212(c) relief was granted prior to the passage of AEDPA and IIRIRA, the Court stated that "preserving the possibility of such relief would have been one of the principal benefits sought by defendants deciding whether to accept a plea offer or instead to proceed to trial." *St. Cyr*, 533 U.S. at 323 (footnote omitted). The Court cited the example of Charles Jideonwo, an alien charged with violating federal narcotics law who entered into extensive plea negotiations with the government, "the sole purpose of which was to ensure that 'he got less than five years to avoid what would have been a statutory bar on 212(c) relief.' " *Id.* (quoting *Jideonwo v. INS*, 224 F.3d 692, 699 (7th Cir. 2000)). In fact, "a great number of defendants in Jideonwo's and St. Cyr's position agreed to plead guilty" in reliance upon "settled practice, the advice of counsel, and perhaps even assurances in open court that the entry of the plea would not foreclose 212(c) relief." *Id.* Because, prior to AEDPA and IIRIRA, St. Cyr "had a significant likelihood of receiving § 212(c) relief," and he "almost certainly relied upon that likelihood" in pleading guilty, the Court held that § 212(c) relief remained available for him. *Id.* at 325, 326.

**[3]** Unlike St. Cyr, Gonzalez did not have "settled expectations" of relief when he pled guilty in 1994. *Id.* at 321 (internal quotations omitted). The statutory bar to § 212(c) relief, which was triggered by sentences for a term of five years or more, has no such counterpart in § 212(h). Thus, unlike in *St. Cyr*, there is no indication that, as a matter of common practice, aliens have chosen to forego their constitutional right to trial in reliance on maintaining their eligibility for § 212(h) relief by pleading guilty and thus ensuring a particular sentence.

**[4]** Gonzalez contends that, at the time he pled guilty, he could have applied for adjustment of status to LPR status,

pursuant to 8 U.S.C. § 1255(i). Although he was ineligible for adjustment of status because his conviction rendered him inadmissible, he further could have sought a waiver of inadmissibility under § 212(h). There is no evidence in the record, however, that Gonzalez ever applied to adjust his status, that his parents applied for a visa, or that a visa would have been immediately available if an application had been filed on his behalf, as required by 8 U.S.C. § 1255(i)(2)(B). Thus, unlike St. Cyr, whose eligibility for relief was based solely on the exercise of the Attorney General's discretion under § 212(c), the possibility of relief for Gonzalez was remote. In these circumstances, we cannot conclude that he had settled expectations of relief when he pled guilty to the aggravated felony, within the meaning of *St. Cyr*.

**[5]** We note our holding in *Alvarez-Barajas v. Gonzales*, 418 F.3d 1050 (9th Cir. 2005), that § 348(b) of IIRIRA, the provision that made aliens convicted of aggravated felonies ineligible for § 212(h) discretionary relief, could be applied retroactively to aliens who pled guilty to such felonies prior to the April 1, 1997, effective date of IIRIRA § 348. *Id.* at 1054-55. *Alvarez-Barajas*, however, is not dispositive of the instant case because § 348 expressly applies only to LPRs. *See* IIRIRA § 348(a) (amending § 212(h) by prohibiting the grant of a waiver "in the case of an alien who has previously been admitted to the United States as an alien lawfully admitted for permanent residence"). This limitation on § 212(h) relief, therefore, does not apply to Gonzalez, who is not and has never been an LPR. *See United States v. Arrieta*, 224 F.3d 1076, 1080 n.2 (9th Cir. 2000) (noting that the § 212(h) limitation on an alien convicted of an aggravated felony did not apply to someone who never was a lawful permanent resident). Our holding thus rests on Gonzalez's failure to establish that § 1228 disrupted his settled expectations.

**[6]** Gonzalez was ineligible for § 212(h) relief when he was served with a Notice to Appear on December 8, 1997, because of the 1996 amendments to § 1228(b)(5). Therefore, Gonza-

lez's argument that his waiver was invalid because he was not informed of his eligibility for relief necessarily fails. *Cf. Ubaldo-Figueroa*, 364 F.3d at 1051 (holding that the IJ's failure to inform alien that he was eligible for relief from deportation constitutes a due process violation if alien establishes prejudice). We therefore conclude that Gonzalez's waiver of his right to appeal was valid.

## III.   CONCLUSION

**[7]** Because Gonzalez validly waived the right to appeal the deportation orders underlying his indictment for violation of § 1326, Gonzalez cannot collaterally attack the validity of those underlying deportations. *See Muro-Inclan*, 249 F.3d at 1182 (explaining that an alien is barred from collaterally attacking the validity of an underlying deportation order "if he validly waived the right to appeal that order" during the deportation proceedings). Accordingly, the judgment of the district court is

**AFFIRMED.**