# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
          *Plaintiff-Appellee,*

v.

WILLIS ROBERTO REYES-BONILLA,
AKA Francisco Alvarado Garcia,
AKA Francisco Garcia Alvarado,
          *Defendant-Appellant.*

No. 10-50361

D.C. No.
3:09-cr-02918-
MMA-1

OPINION

Appeal from the United States District Court
for the Southern District of California
Michael M. Anello, District Judge, Presiding

Argued and Submitted
May 3, 2011—Pasadena, California

Filed February 6, 2012

Before: Alfred T. Goodwin and Kim McLane Wardlaw,
Circuit Judges, and Brian M. Cogan, District Judge.*

Opinion by Judge Goodwin

---

*The Honorable Brian M. Cogan, U.S. District Judge for the Eastern
District of New York, sitting by designation.

## COUNSEL

Brendan M. Hickey, San Francisco, California, for the defendant-appellant.

Kyle W. Hoffman, Assistant United States Attorney, San Diego, California, for the plaintiff-appellee.

## OPINION

GOODWIN, Senior Circuit Judge:

Following a conditional guilty plea, Willis Reyes-Bonilla ("Reyes") appeals his conviction for being a deported alien found in the United States without permission in violation of 8 U.S.C. § 1326. Reyes contends that the district court should have granted his motion to dismiss the indictment because it was based on a 2001 removal order that was entered in violation of his due process right to counsel, prejudicing his ability to obtain immigration relief.

Almost twenty years ago, our circuit held that a defendant seeking to exclude evidence of a prior removal order in a prosecution for illegal reentry must do more than demonstrate a violation of due process rights; "[t]he defendant also bears the burden of proving prejudice." *United States v. Proa-Tovar*, 975 F.2d 592, 595 (9th Cir. 1992) (en banc); *see also* 8 U.S.C. § 1326(d)(3) (requiring an alien to show that "entry of the order was fundamentally unfair" in order to succeed on a collateral attack). In so doing, the *Proa-Tovar* court recognized that the defendant was effectively denied his right to direct review of the removal order, but affirmed his conviction for illegal reentry because he could identify "no plausible grounds of relief" that would have precluded his removal. 975 F.2d at 594. Accordingly, we did "not attempt to delineate the boundaries of the prejudice element" because "[w]hatever they might be, Proa-Tovar did not show that he suffered even the possibility of prejudice." *Id.* at 595-96.

In this appeal, we are faced with two more variations in what has become an ongoing debate over "the boundaries of

prejudice" resulting from due process violations during removal proceedings. First, we address whether prejudice should be presumed where an alien was not advised of his right to counsel and did not waive this right. We hold that such a violation does not by itself establish per se prejudice for the purpose of a collateral attack on a final removal order under § 1326(d)(3). Second, we address what constitutes a plausible claim to deferral of removal under the Convention Against Torture ("CAT"), in light of the absence of counsel at the time of removal proceedings. For the reasons that follow, we hold that Reyes has not established that he had a plausible claim to relief at the time the removal order was issued. Accordingly, we affirm.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    Reyes's Removal in 2001

A citizen of Guatemala, Reyes first entered the United States without permission in 1991 at the age of twenty. In 1995, Reyes was convicted in Los Angeles County of carjacking and assault with a firearm in violation of California Penal Code §§ 215(a) and 245(a)(2) and sentenced to seven years in prison. Prior to his release, Reyes was investigated by U.S. immigration authorities.

Finding that Reyes was not a legal permanent resident and had been convicted of an aggravated felony, immigration authorities processed his removal from the United States through expedited proceedings. Pursuant to 8 U.S.C. § 1228(b), the Attorney General has the discretion to determine the deportability of a non-permanent resident alien who has been convicted of an aggravated felony and issue a final order of removal without a hearing before an immigration judge. *See* 8 C.F.R. § 238.1 (outlining requirements for expedited removal proceedings under § 1228).[1]

---

[1]Under 8 U.S.C. § 1225, the Attorney General also has the discretion to remove inadmissible arriving aliens through expedited proceedings. *See* 8

On August 16, 2001, Deportation Officer Joel Mata Jr. served Reyes with a two-page Notice of Intent to Issue a Final Administrative Removal Order ("Notice of Intent"). The first page of the Notice of Intent charged Reyes with being deportable under 8 U.S.C. § 1227(a)(2)(A)(iii), identified the allegations supporting this charge, and listed Reyes's statutory rights and responsibilities. It also stated that pursuant to § 1228(b), the government intended to issue the final order "without a hearing before an immigration judge," although Reyes could "seek judicial review of any final administrative order by filing a petition for review." Among his rights, the Notice of Intent states that Reyes "may be represented (at no expense to the United States government) by counsel, authorized to practice in this proceeding."

The Notice of Intent is entirely in English. Reyes has testified, however, that he "cannot speak or read English." At the bottom of the first page, the section of the notice attesting to service indicates that Officer Mata "explained and/or served" it to Reyes in Spanish. While there is a signature block for an interpreter, it was left blank.

On the second page of the Notice of Intent, Reyes acknowledged receiving it and indicated that he did not wish to contest the charge by signing a preprinted waiver section, which was also entirely in English. This preprinted admission/waiver section states:

> I admit the allegations and charge in the Notice of Intent. I admit that I am deportable and acknowledge that I am not eligible for any form of relief from

---

C.F.R. § 1235.3 (outlining requirements for expedited removal proceedings under § 1225). It should be noted, however, that these expedited proceedings are different in several respects from those involved here under § 1228. *See generally United States v. Barajas-Alvarado*, 655 F.3d 1077, 1081-82 (9th Cir. 2011).

> removal. I waive my right to rebut and contest the above charges and my right to file a petition for review of the Final Removal Order. I wish to be deported to *Guatemala*.

While Officer Mata signed this section as a witness, there is no additional indication that he explained or read the preprinted admissions and waivers to Reyes in Spanish. The waiver section also makes no mention of Reyes's waiver of his right to counsel.

Based on the uncontested allegations in the Notice of Intent and Reyes's waiver of his right to file a petition for review, a Final Administrative Removal Order was issued on August 7, 2001. Reyes was subsequently removed to Guatemala on October 10, 2001.

## B.   Reinstatement of the Removal Order in 2007

Reyes reentered the United States without permission in 2003. In 2006, Reyes was arrested in San Diego County and pleaded guilty to driving under the influence of alcohol. While on probation for this charge, Reyes was again arrested for driving under the influence and sentenced to nine days in jail. Following completion of this sentence, Reyes was detained by Immigration and Customs Enforcement ("ICE") in November 2007.[2]

During an interview conducted in Spanish on November 19, 2007, Reyes told an ICE agent that he "fear[ed] persecu-

---

[2]Prior to 2003, immigration offenses were largely handled by the Immigration and Naturalization Service ("INS"). This agency ceased to exist in 2003, and most of its functions were transferred to the Department of Homeland Security and its subagency, ICE. *See* Homeland Security Act of 2002, §§ 441, 471, 6 U.S.C. §§ 251, 291; *Morales-Izquierdo v. Gonzales*, 486 F.3d 484, 489 n.7 (9th Cir. 2007) (en banc). To minimize confusion, we refer only to ICE, although Reyes's 2001 removal was handled by INS.

tion or torture should [he] be removed from the United States," explaining that "[g]angs in Guatemala have threatened my life." Nine days later, however, Reyes filed a form withdrawing his request for a reasonable fear determination. Completed with the assistance of a Spanish translator, this form states that Reyes was withdrawing his prior request because: "I never intended to apply for asylum and want to return to Guatemala as soon as possible. I am not afraid to return to Guatemala."[3] This form further indicates that Reyes had been advised of his "right to seek protection from removal based on fear of torture or persecution," that he was represented by counsel, and that he had discussed the matter with his counsel. Finally, the form includes an English translation of questioning about his prior statements in which Reyes says: "The officer who interviewed me asked me if I was afraid and I just said gangs were bad in Guatemala. I did not mean that I was afraid to return because of the gangs or that I would be harmed. That is not the case." While Reyes now contends that he was not represented by counsel and did not consult with an attorney at the time he withdrew his request, he does not dispute the accuracy of the statements attributed to him.

Following Reyes's withdrawal of his request for a reasonable fear determination, the 2001 removal order was reinstated. Reyes was subsequently removed to Guatemala on December 19, 2007.

## C. Proceedings Before the District Court

In less than twelve months, Reyes again returned to the United States and was again arrested for driving under the influence of alcohol. After serving a year in jail, he was released to ICE on May 27, 2009. On July 30, 2009, Reyes

---

[3]While not disputing the accuracy of the statements attributed to him, Reyes notes that the name of the interpreter is not provided on the form, just the interpreter's license number.

was indicted on one count of being an alien found in the United States following removal in violation of 8 U.S.C. § 1326(a) and (b).

Reyes moved to dismiss the indictment, arguing that the August 7, 2001 final removal order was invalid because he was never advised of his rights in a language he could understand and therefore did not validly waive them. In support, Reyes testified that at the time of his initial removal in 2001: "I was told by the immigration officer that I was going to be deported and that I should just sign so I could go. . . . I was never advised [by] the immigration officer of my right to consult with an attorney, my right to appeal, or that I might be eligible for immigration relief."

Reyes argued that he was prejudiced by this due process violation because with the help of counsel he could have sought some form of relief, including deferral of his removal based on his fear of gang violence in Guatemala. He testified that "I never had the opportunity to tell the immigration officer about the dangers of returning to Guatemala." Reyes contends that "[p]eople who return from the United States are frequently targeted by gangs because the gangs believe that they have money." Further, he alleges that "[m]embers of the gang MS-13 beat me and tried to kill me in Guatemala between 2001 and 2003."

As to the statements he made in 2007 when he withdrew his request for a reasonable fear determination, Reyes testified:

> "In 2007, I told the immigration officer about my fear of returning to Guatemala. I was then referred to an asylum officer. I spoke with the asylum officer for only a few minutes. He did not explain my rights to me, and at no time did I consult with an attorney. I was told that I did not have a chance, and that I should initial a form so they could send me out."

Following a hearing, the district court from the bench denied Reyes's motion to dismiss the indictment. Based on the language in the Notice of Intent, the court found that Reyes "was advised of his right to counsel and that he waived it." The court stated that "some deference and some validity has to be given to these official documents. . . . It just seems the document here is so clear cut, and there is no evidence to the contrary other than [Reyes's] own declaration." Accordingly, the district court did not address Reyes's claim to prejudice.

## II.   JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction to review a final judgment of the district court pursuant to 28 U.S.C. § 1291. We review *de novo* a claim that a defect in a prior removal proceeding precludes reliance on the final removal order in a subsequent § 1326 proceeding. *United States v. Ramos*, 623 F.3d 672, 679 (9th Cir. 2010) (quoting *United States v. Lopez-Vasquez*, 1 F.3d 751, 752 (9th Cir. 1993) ("A claim that a defect in a prior deportation order precludes reliance on the deportation in a prosecution for violation of 8 U.S.C. § 1326 presents mixed questions of law and fact requiring us to exercise judgment about legal principles." (internal quotation marks and citation omitted)). We review the district court's findings of fact for clear error. *Id.* at 680. We may affirm a district court's denial of a motion to dismiss an indictment on any basis supported by the record. *United States v. Davis*, 336 F.3d 920, 922 (9th Cir. 2003).

## III.   DISCUSSION

Reyes contends that his indictment for illegal reentry should be dismissed because the 2001 removal order was entered in violation of his due process rights. "Because the underlying removal order serves as a predicate element of an illegal reentry offense under § 1326, a defendant charged with that offense may collaterally attack the removal order under

the due process clause." *United States v. Pallares-Galan*, 359 F.3d 1088, 1095 (9th Cir. 2004) (citing *United States v. Mendoza-Lopez*, 481 U.S. 828, 837-38 (1987) ("Our cases establish that where a determination made in an administrative proceeding is to play a critical role in the subsequent imposition of a criminal sanction, there must be *some* meaningful review of the administrative proceeding.")).

**[1]** To succeed in such a challenge, however, an alien must demonstrate that: "(1) the alien exhausted any administrative remedies that may have been available to seek relief against the order; (2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and (3) the entry of the order was fundamentally unfair." 8 U.S.C. § 1326(d).[4] "Under our case law, a predicate removal order satisfies the condition of being 'fundamentally unfair' for purposes of § 1326(d)(3) when the deportation proceeding violated the alien's due process rights and the alien suffered prejudice as a result." *United States v. Arias-Ordonez*, 597 F.3d 972, 976 (9th Cir. 2010) (citing *United States v. Ubaldo-Figueroa*, 364 F.3d 1042, 1048 (9th Cir. 2004)).

Reyes argues that his due process rights were violated because he was not advised of his right of appeal or his right to counsel in a language that he could understand, making any waiver of these rights invalid. Further, he claims that the denial of his right to counsel inherently prejudiced his ability to obtain immigration relief, satisfying the fundamental unfairness requirement under § 1326(d)(3) without a further showing of actual prejudice. Reyes also argues that he was actually prejudiced by the denial of his right to counsel because with such assistance, he would have been able to present a plausible claim for deferral of removal under CAT.

---

[4]Through the addition of subsection (d) to 8 U.S.C. § 1362 in 1996, Congress partially codified the Court's decision in *Mendoza-Lopez*. *United States v. Garcia-Martinez*, 228 F.3d 956, 959 n.5 (9th Cir. 2000).

### A.  Due Process Violations

### 1.  Right to Appeal

**[2]** "[A]n alien is barred from collaterally attacking the validity of an underlying deportation order if he validly waived the right to appeal that order during the deportation proceedings." *United States v. Gonzalez*, 429 F.3d 1252, 1256 (9th Cir. 2005) (internal quotation marks and citation omitted). Accordingly, we must first determine whether Reyes validly waived his right of appeal by signing the waiver section of the 2001 Notice of Intent. If Reyes did not validly waive his right of appeal, the first two requirements under § 1326(d) will be satisfied. *See Ubaldo-Figueroa*, 364 F.3d at 1049-50.

Even in expedited removal proceedings conducted under 8 U.S.C. § 1228, an alien's waiver of the right of appeal must be both considered and intelligent in order to be valid. *See Gonzalez*, 429 F.3d at 1256; *United States v. Arrieta*, 224 F.3d 1076, 1079 (9th Cir. 2000). "The government bears the burden of proving valid waiver in a collateral attack of the underlying removal proceedings," *Ramos*, 623 F.3d at 680, and it must do so by clear and convincing evidence. *Pallares-Galan*, 359 F.3d at 1097 (quoting *Gete v. INS*, 121 F.3d 1285, 1293 (9th Cir. 1997)).

Based on the language of the Notice of Intent, the district court found that Reyes had validly waived his right of appeal. This conclusion would be sound if Reyes had not contested his understanding of the notice. "[W]here the government introduces official records which on their face show a valid waiver of rights in connection with a deportation proceeding, the burden shifts to the defendant to come forward with evidence tending to prove the waiver was invalid." *United States v. Galicia-Gonzalez*, 997 F.2d 602, 604 (9th Cir. 1993) (affirming waiver where the defendant failed to even suggest that "his rights were improperly explained or that he was coerced into waiving them").

Yet Reyes specifically testified that he cannot read English and that Officer Mata did not advise him of the rights detailed in the Notice of Intent. While dismissing Reyes's declaration as "self-serving," the district court failed to address the key factual issue of whether Reyes was actually advised of the contents of the Notice of Intent in a language he could understand.[5] *See* 8 CFR § 238.1(b)(2)(v) ("[ICE] must either provide the alien with a written translation of the Notice of Intent or explain the contents of the Notice of Intent to the alien in the alien's native language or in a language that the alien understands.").

**[3]** A waiver of rights cannot be found to have been considered or intelligent where there is no evidence that the detainee was first advised of those rights in a language he could understand. *See Ramos*, 623 F.3d at 681 ("We cannot conclude that waiver of rights, including the right to appeal, was 'considered or intelligent' without evidence that a detainee was 'able to understand the questions posed to him' when put to the choice of foregoing all rights or remaining in detention until he could appear before an IJ." (quoting *Perez-Lastor v. INS*, 208 F.3d 773, 778 (9th Cir. 2000) ("It is long-settled that a competent translation is fundamental to a full and fair hearing. If an alien does not speak English, deportation proceedings must be translated into a language the alien understands.")).

---

[5]To the extent that the district court's statements imply a finding of fact that either Reyes could read the Notice of Intent or that he was advised of the rights outlined therein in Spanish, such a finding was clearly erroneous because it is unsupported by the record. *See United States v. Hinkson*, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc) (factual findings are clearly erroneous when they are "without 'support in inferences that may be drawn from the facts in the record'") (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 577 (1985)).

While the government has defended the district court's finding of waiver, it largely conceded that the record here is insufficient to establish that Reyes understood his rights.

**[4]** The language of the Notice of Intent falls far short of clear and convincing evidence that Reyes was advised of his right of appeal in a language he could understand. The only indication that Reyes was advised of his rights in Spanish is the notation that Officer Mata "explained and/or served" it to Reyes in Spanish. This language can be read to mean that Reyes was only served with the Notice of Intent in Spanish, and the Government failed to adduce evidence suggesting that the notice was in fact *explained* in Spanish. Because the record is unclear on this point, we cannot simply presume that Reyes was advised of his rights in a language he could understand. *See Ramos*, 623 F.3d at 680 ("We 'indulge every reasonable presumption against waiver,' and do 'not presume acquiescence in the loss of fundamental rights.' ") (quoting *Lopez-Vasquez*, 1 F.3d at 753).

Even if we were to assume from this notation that some explanation was given, there is no evidence as to the extent of the explanation given or Officer Mata's ability to communicate in Spanish. Further, there is no indication that such an explanation extended to the pre-printed waiver on the second page of the notice. *See Pallares-Galan*, 359 F.3d at 1096-98 (explaining that evidence of a detainee's understanding of his right of appeal is not sufficient to establish a considered and intelligent waiver of that right). In *Ramos*, we rejected a waiver given after an immigration officer who was not fluent in Spanish attempted to explain to the detainee in broken Spanish the rights specified in a stipulated removal form. 623 F.3d at 681 ("The government argues that Ramos's waiver was 'considered and intelligent' because Ramos failed to give any indication to the deportation officer that he did not understand or appreciate what he was signing. However, a deportation officer's 'feeling' that a detainee understood her broken attempts to speak Spanish is insufficient to meet the government's burden."). We concluded that "Ramos's waiver of appeal and of the due process rights specified in the Stipulated Removal form was not 'considered or intelligent' because he did not receive a competent Spanish language translation of

his right to appeal when he signed the form." *Id.* at 680; *see also id.* at 681 ("Moreover, we cannot conclude that Ramos's waiver was 'considered and intelligent' because the government has not established by 'clear and convincing evidence' that he received adequate advisement of the consequences of his waiver of appeal.") (citing *Pallares-Galan*, 359 F.3d at 1097). There is even less evidence here of a competent translation because the government has proffered no evidence that Officer Mata made any attempt to explain to Reyes his rights before he waived them.

**[5]** Under these circumstances, the government has failed to meet its burden of proving that Reyes's waiver of his right of appeal was considered and intelligent. Because he did not validly waive his right of appeal, Reyes is exempted from the requirement under 8 U.S.C. § 1326(d)(1) that he exhaust all administrative remedies before collaterally attacking the 2001 removal order. *See Ubaldo-Figueroa*, 364 F.3d at 1050 ("[W]e hold that although Ubaldo-Figueroa did not exhaust his administrative remedies by appealing his removal order to the BIA in 1998, he is exempted from the exhaustion bar because his waiver of his right to appeal was not sufficiently 'considered and intelligent' under the Due Process Clause of the Fifth Amendment."). Further, Reyes has met the requirement under § 1326(d)(2) that "the deportation proceedings at which the order was issued improperly deprived [him] of the opportunity for judicial review" because he was not advised of his right to appeal the final removal order. *Id.* ("[W]e find that Ubaldo-Figueroa was deprived of the opportunity for meaningful judicial review because the IJ did not inform him of his right to appeal his deportation order.").

### 2. Right to Counsel

**[6]** Although Reyes has satisfied the first two prongs of § 1326 based on his right of appeal, we briefly address the due process violation related specifically to his right to counsel because his claim to prejudice under the third prong rests

squarely on the impingement of this right. "Although there is no Sixth Amendment right to counsel in an immigration hearing, Congress has recognized it among the rights stemming from the Fifth Amendment guarantee of due process that adhere to individuals that are the subject of removal proceedings." *Tawadrus v. Ashcroft*, 364 F.3d 1099, 1103 (9th Cir. 2004) (citing *Rios-Berrios v. INS*, 776 F.2d 859, 862 (9th Cir. 1985)). While "[t]he right to counsel in immigration proceedings is rooted in the Due Process Clause," *Biwot v. Gonzales*, 403 F.3d 1094, 1098 (9th Cir. 2005), the right to counsel in expedited removal proceedings is also secured by statute. 8 U.S.C. § 1228(b)(4)(B) ("[T]he alien shall have the privilege of being represented (at no expense to the government) by such counsel, authorized to practice in such proceedings, as the alien shall choose."); 8 C.F.R. § 238.1(b)(2)(i) ("[The Notice of Intent] shall advise that the alien: has the privilege of being represented, at no expense to the government, by counsel of the alien's choosing, as long as counsel is authorized to practice in removal proceedings . . . ."); *see also* 8 C.F.R. § 238.1(b)(2)(iv) (requiring ICE to provide aliens facing expedited removal "with a list of available free legal services programs").

**[7]** As discussed previously, the record fails to show that Reyes was advised of any of his due process rights, including his right to counsel, in a language he could understand. Such an explanation of the due process rights outlined in the Notice of Intent is required under 8 C.F.R. § 238.1(b)(2)(v). *See Ramon-Sepulveda v. INS*, 743 F.2d 1307, 1310 (9th Cir. 1984) ("It is a well-known maxim that agencies must comply with their own regulations." (internal quotation marks and citation omitted)). This procedural error in Reyes's expedited removal constitutes a violation of his due process right to counsel. *See Ramos*, 623 F.3d at 683 (holding that failure to "receive a competent explanation of his rights in a language he could understand" invalidated Ramos's express waiver of the right to counsel and thereby violated his due process right to counsel).

**[8]** Further, the district court erred in finding that Reyes waived his right to counsel. The Notice of Intent signed by Reyes includes no express waiver of the right to counsel.[6] Accordingly, the district court's finding that he did waive his right to counsel was clearly erroneous because no such affirmative waiver is stated in the record or could be assumed. *See Hinkson*, 585 F.3d at 1262; *Tawadrus*, 364 F.3d at 1103 ("In order for a waiver to be valid, an IJ must generally: (1) inquire specifically as to whether petitioner wishes to continue without a lawyer; and (2) receive a knowing and voluntary *affirmative* response." (emphasis added and internal citations omitted)); *Ramos*, 623 F.3d at 680 (noting that we do not presume waiver of fundamental rights). Therefore, Reyes was not properly advised of his due process right to counsel nor did he waive this right.

### B. Prejudice

**[9]** As noted, "a predicate removal order satisfies the condition of being 'fundamentally unfair' for purposes of § 1326(d)(3) when the deportation proceeding violated the alien's due process rights and the alien suffered prejudice as a result." *Arias-Ordonez*, 597 F.3d at 976 (citing *Ubaldo-Figueroa*, 364 F.3d at 1048). Having established that the removal proceedings here violated Reyes's due process right to counsel, we turn to his claim of prejudice resulting from

---

[6]Neither 8 U.S.C. § 1228(b) nor 8 C.F.R. § 238.1 requires a detainee to waive his right to counsel when admitting a charge of being removable. Where as here, an alien concedes his deportability, a "deciding Service officer shall issue and cause to be served upon the alien a Final Administrative Removal Order that states the reasons for the deportation decision" without a hearing. 8 C.F.R. § 238.1(d)(1); *see also Garcia-Martinez*, 228 F.3d at 960 (explaining expedited removal proceedings under § 1228). Thus the requirement that an alien expressly waive his right to counsel when appearing *pro se* at a removal hearing before an immigration judge would not apply here. *See Tawadrus*, 364 F.3d at 1103. As a result, it is not clear that Reyes's failure to waive his right to counsel alone would support a due process or procedural violation related to his expedited removal proceedings.

this violation. First, Reyes argues that a due process violation of an alien's right to counsel during removal proceedings establishes per se prejudice—requiring no further showing of actual prejudice—for the purpose of a collateral attack on a final removal order under § 1326(d)(3).[7] Second, he argues that he was actually prejudiced because with the assistance of counsel, he could have presented a plausible claim to deferral of removal under CAT.

### 1.   Per Se Prejudice

In establishing a Fifth Amendment right to collaterally attack a removal order, the Supreme Court in *Mendoza-Lopez* held that "[t]he fundamental procedural defects of the deportation hearing in this case rendered direct review of the Immigration Judge's determination unavailable to respondents." 481 U.S. at 841. While declining "to enumerate which procedural errors are so fundamental that they may functionally deprive the alien of judicial review," the Court recognized that some procedural "abuses could operate, under some circumstances, to deny effective judicial review of administrative determinations."[8] *Id.* at 839 n.17. Based on *Mendoza-Lopez*, the initial *Proa-Tovar* panel adopted a bright-line rule that violation of an alien's due process right to judicial review of a removal order made that order inadmissible in a subsequent illegal reentry case, regardless of whether actual prejudice could be shown. *United States v. Proa-Tovar*, 945 F.2d 1450, 1453-54 (9th Cir. 1991) (reading *Mendoza-Lopez* "as a bright-line rule," in order "to encourage the INS to make certain that every person deported as the result of an administra-

---

[7]Although we found that the defendant in *Ramos* was denied his right to counsel in the underlying removal proceeding, we did not address whether prejudice could be presumed from this due process violation. 623 F.3d at 683-84.

[8]Congress partially codified this decision in 1996 through the addition of subsection (d) to 8 U.S.C. § 1362. *United States v. Garcia-Martinez*, 228 F.3d 956, 959 n.5 (9th Cir. 2000).

tive hearing was adequately apprised, on the record, of his right to appeal"), *overruled en banc by Proa-Tovar*, 975 F.2d 592 (9th Cir. 1992).

Taking *Proa-Tovar* en banc, our circuit held that *Mendoza-Lopez* did not support this bright-line approach and affirmed prior circuit cases that required a showing of prejudice.[9] 975 F.2d at 595. Our court stated:

> We are . . . satisfied that the [Supreme] Court has not eliminated prejudice from the equation. Our pre-*Mendoza-Lopez* cases required a showing of prejudice when collateral attacks on immigration orders were made in prosecutions under section 1326. *See, e.g.*, *United States v. Nicholas-Armenta*, 763 F.2d [1089, 1091(9th Cir. 1985)]; *United States v. Calles-Pineda*, 627 F.2d 976, 977-78 (9th Cir. 1980); *cf. Colindres-Aguilar v. INS*, 819 F.2d 259, 261 (9th Cir. 1987) ([on direct appeal,] due process challenge to INS proceeding requires showing of actual prejudice). We hold that the rule established in those cases also applies when the attack is on the ground that there has been a deprivation of the right to direct appeal of the administrative proceedings.

*Id.*

---

[9]As the author of the original panel opinion, I dissented in *Proa-Tovar*, arguing that the majority decision "encourages [immigration] hearing officers to continue to ignore proper procedure in bulk deportation hearings." 975 F.2d at 596 (Goodwin, J., dissenting) ("While the result accomplishes no injustice in this case, it invites future cases, and teaches the wrong lesson."). The steady recurrence of these cases proves the point that there is little incentive for the government to correct procedures that regularly result in due process violations when most claims will ultimately fail to satisfy the prejudice requirement. Despite this sad commentary on our collective commitment to due process, my concerns over judicial economy are now just spilt milk.

While not cited in *Proa-Tovar*, one of our pre-*Mendoza-Lopez* cases to require a showing of prejudice, *United States v. Cerda-Pena*, 799 F.2d 1374, 1379 (9th Cir. 1986), involved an immigration judge's failure to properly advise an alien of his right to counsel. In *Cerda-Pena*, a defendant facing illegal reentry charges alleged multiple procedural violations at his prior deportation hearing, including: "(1) the Immigration and Naturalization Service (INS) failed to inform appellant of his right to contact the Mexican Consul, (2) the immigration judge failed adequately to apprise appellant of his right to be represented by counsel, and (3) the INS did not provide appellant with a competent interpreter at his deportation hearing." *Id.* at 1376. We rejected the defendant's assertion "that he showed prejudice by producing evidence indicating that he would have availed himself of the procedural protections denied him and that he was not required to show that such an availment actually had the potential for changing the outcome of the proceedings." *Id.* We held that "[t]he district court applied the proper legal standard when it required appellant to make some showing that the alleged violations actually had the potential for affecting the outcome of his deportation proceedings." *Id.* at 1379.

**[10]** Although stated in a footnote, the *Cerda-Pena* court directly addressed the suggestion "that an effective denial of counsel might be considered *per se* prejudicial" during a collateral attack. *Id.* at 1377 n.3 (discussing the applicability of *Rios-Berrios v. INS*, 776 F.2d 859, 863-64 (9th Cir. 1985)). Despite finding that an absolute denial of an alien's right to representation during immigration proceedings might be presumed to be prejudicial, the court concluded that simply failing to properly advise the alien of his right to counsel was *not* per se prejudicial. *Id.* ("While recognizing that an outright refusal to allow an alien the opportunity to obtain representation may be such an egregious violation of due process so as not to require any further showing of prejudice, this Court believes that an immigration judge's failure adequately to apprise an alien of his or her right to representation should

only invalidate the deportation if actual prejudice is shown, as is the case with other violations of INS regulations and of due process," citing *United States v. Rangel Gonzales*, 617 F.2d 529, 530 (9th Cir. 1980) (challenge based on violation of an INS regulation must include a showing of prejudice); *Nicholas-Armenta*, 763 F.2d at 1091(due process challenges must include a showing of prejudice)).**[10]**

**[11]** Our decision in *Proa-Tovar* clearly held that the Supreme Court did not remove prejudice from the evaluation of due process violations and reaffirmed prior cases in which we had imposed this requirement on collateral attacks against removal orders. 975 F.2d at 595. Although decided before *Mendoza-Lopez* and the amendment of 8 U.S.C. § 1326, *Cerda-Pena* is just such a case, and applied here, it forecloses Reyes's argument that prejudice should be presumed based on ICE's failure properly to advise him of his right to counsel.

Similar to the dicta in *Cerda-Pena* that a more serious violation of the right to counsel might require a presumption of prejudice, our court in *Proa-Tovar* noted that "there may well be times when the administrative proceedings were so flawed that effective judicial review will be foreclosed." *Id.* (referencing the Supreme Court's statements in *Mendoza-Lopez* that some procedural "abuses could operate, under some circumstances, to deny effective judicial review of administrative determinations," 481 U.S. at 839 n.17).

---

**[10]**This evaluation of prejudice resulting from the denial of right to counsel during a prior immigration proceeding was largely mirrored by the First Circuit. *See Loaisiga*, 104 F.3d at 488 ("The 'right to counsel,' says Loaisiga, is an exception to the general rule that prejudice must be shown. But argument by talisman is not very productive; impairments of the right to counsel differ in degree and context, and such differences affect whether and to what extent prejudice must be shown. Perhaps there may be deportations where a denial of counsel was so flagrant, and the difficulty of proving prejudice so great, as to argue for presuming harm. But this is not such a case." (internal citations omitted)).

**[12]** In light of the discussion in *Cerda-Pena* and the subsequent affirmance of the general rule it applied by *Proa-Tovar*, we conclude that prejudice should not be presumed here. We have previously referred to current immigration law as "a labyrinth that only a lawyer could navigate." *Biwot*, 403 F.3d at 1098. Nonetheless, if a defendant aided by counsel is unable subsequently to identify any plausible path to relief that might have prevented his prior removal, the failure to advise him of his right to counsel at the time of the removal proceedings cannot be considered inherently prejudicial. *See Proa-Tovar*, 975 F.2d at 595 ("By all accounts, Proa-Tovar would have been deported anyway. . . . The fact that the IJ did not punctiliously follow the law and regulations regarding direct appeals has made no legal difference at all."). We therefore hold that in order to mount a successful collateral attack on a prior removal order under § 1326(d), an alien who was convicted of an aggravated felony and was not properly advised of his right to counsel or did not waive this right must show that he was actually prejudiced by this due process violation.[11]

**[13]** Although a defendant who is affirmatively prevented from exercising his right to be represented by counsel might claim per se prejudice, *see Cerda-Pena*, 799 F.2d at 1377 n.3, the facts here indicate only that Reyes was not properly advised of his right to counsel and did not waive this right. Therefore, he must show that he was actually prejudiced as a result of this due process violation.

---

[11]At oral argument, defense counsel argued that Reyes should, at a minimum, be entitled to a rebuttable presumption of prejudice. Shifting the burden of proof in this case, however, would contradict Congress's instruction that "[a]n alien convicted of an aggravated felony shall be conclusively presumed to be deportable from the United States." 8 U.S.C. § 1228(c). We are cognizant of the reality that without the assistance of counsel, almost no alien facing expedited removal has a realistic chance at relief. We believe, however, that this factor is best considered when evaluating actual prejudice, specifically whether the alien could have plausibly obtained relief if he had been capably represented.

### 2.  Actual Prejudice

**[14]** Reyes contends that he was actually prejudiced because a capable attorney could have sought deferral of his removal in 2001 based on the Convention Against Torture. To establish prejudice as a result of ICE's failure to adequately advise him of his right to counsel, Reyes need only show that there were "plausible grounds" on which he could have been granted relief from removal in 2001. *Ramos*, 623 F.3d at 684 ("A defendant need not conclusively demonstrate that he or she would have received relief to show prejudice, but must show only that there were 'plausible grounds for relief.' ") (quoting *United States v. Gonzalez-Valerio*, 342 F.3d 1051, 1054 (9th Cir. 2003)); *Pallares-Galan*, 359 F.3d at 1104 ("[A defendant] is entitled to the dismissal of his indictment if, upon a review of the record, it appears that an IJ could have concluded that his potential claim for relief from deportation would be 'plausible.' "). A plausible claim to relief, however, requires some evidentiary basis on which relief could have been granted, not merely a showing that some form of immigration relief was theoretically possible. *Compare United States v. Cisneros-Resendiz*, 656 F.3d 1015, 1021-23 (9th Cir. 2011) (holding that appellant did not demonstrate a plausible claim to relief where the evidence cited would have weighed against granting him permission to withdraw his application for admission); *United States v. Muro-Inclan*, 249 F.3d 1180, 1185 (9th Cir. 2001) (holding that appellant did not establish a plausible claim to relief under 8 U.S.C. § 212(h) where "[t]he hardships alleged by Appellant represent the common results of deportation, and do not represent the type of additional evidence of extreme hardship beyond the normal deprivation of family support." (internal quotation marks and citation omitted)); *with Arrieta*, 224 F.3d at 1082-83 (holding that appellant did establish a plausible claim to relief under 8 U.S.C. § 212(h) based on evidence of extreme hardship to his family that was more than economic deprivation); *Ubaldo-Figueroa*, 364 F.3d at 1050-51 (holding that appellant established a plausible claim to relief under 8 U.S.C. § 1182(c)

where the balance of the equities favored discretionary grant of relief).

**[15]** Because of his prior convictions for aggravated felonies, Reyes's ability to obtain immigration relief in 2001 was severely limited. *See generally United States v. Amador-Leal*, 276 F.3d 511, 516 (9th Cir. 2002) (explaining that after the Antiterrorism and Effective Death Penalty Act of 1996 and the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, "it is now virtually certain that an aggravated felon will be removed"). Reyes could not receive any discretionary relief from removal because he had been placed in expedited proceedings based on his felony convictions.[12] *See* 8 U.S.C. § 1228(b)(5) ("No alien described in this section shall be eligible for any relief from removal that the Attorney General may grant in the Attorney General's discretion."). Further, he was ineligible for the standard mandatory forms of relief of asylum, withholding, or withholding of removal under CAT. *See* 8 U.S.C. § 1158(b)(2)(A)(ii) (barring asylum for aliens "convicted by a final judgment of a particularly serious crime"); 8 U.S.C. § 1231(b)(3)(B)(ii) (barring withholding for aliens "convicted by a final judgment of a particularly serious crime"); 8 C.F.R. § 1208.16(d)(2) (barring withholding of removal under CAT for aliens "convicted of a particularly serious crime").

---

[12]Reyes briefly suggests that a persuasive attorney could have potentially convinced the government to use its discretion to place him in standard removal proceedings, which theoretically would have allowed the Government to administratively close the removal case against him. Reyes suggests no reason why the Government would take such actions, however. Indeed, the government is statutorily barred from cancelling removal proceedings for aliens convicted of aggravated felonies. *See* 8 U.S.C. § 1229b(a)(3). In light of the seriousness of his prior convictions for carjacking and assault with a firearm, we find his speculative suggestion as to administrative closure wholly implausible. *See* Memorandum from John Morton, ICE Director, on Priorities for the Apprehension, Detention, and Removal of Aliens (Mar. 2, 2011), *available at* http://www.ice.gov/doclib/news/releases/ 2011/110302washingtondc.pdf (indicating that removal of aggravated felons is ICE's highest priority).

**[16]** Due to his status as an aggravated felon, the only form of immigration relief available to Reyes in 2001 was deferral of removal under CAT. *See* 8 CFR § 1208.17(a) ("An alien who: has been ordered removed; has been found under § 1208.16(c)(3) to be entitled to protection under the Convention Against Torture; and is subject to the provisions for mandatory denial of withholding of removal under § 1208.16(d)(2) or (d)(3) [due to conviction for aggravated felony], shall be granted deferral of removal to the country where he or she is more likely than not to be tortured."). "[D]eferral of removal provides a less permanent form of protection than withholding of removal and one that is more easily and quickly terminated if it becomes possible to remove the alien consistent with Article 3 of the CAT, while also ensuring that such aliens are not returned to a country where they would be tortured." *Negusie v. Holder*, 555 U.S. 511, 541 n.1 (2009) (Thomas, J., dissenting) (internal alterations, quotation marks, and citations omitted) (explaining that "deferral of removal" was created in order to satisfy the government's treaty obligations under CAT that "[n]o State Party shall . . . return . . . a person to another State where there are substantial grounds for believing that he would be in danger of being subjected to torture, Art. 3, S. Treaty Doc. No. 100-20, at 20") (internal quotation marks omitted); *see also Pierre v. Att'y Gen.*, 528 F.3d 180, 184-86 (3d Cir. 2008) (describing the process by which the treaty's requirements were codified).

With the aid of his current counsel, Reyes contends that he had a plausible claim to deferral of removal under CAT in 2001 based on gang violence in the country. To obtain relief under CAT, "[t]he burden of proof is on the applicant . . . to establish that it is more likely than not that he or she would be tortured if removed to the proposed country of removal." 8 C.F.R. § 1208.16(c)(2); *see also Delgado v. Holder*, 648 F.3d 1095, 1108 (9th Cir. 2011) ("To obtain relief, Delgado was required to prove that 'more likely than not, [ ]he will be tortured at the instigation of, or with the acquiescence of the [Salvadoran] government.' ") ( quoting *Silaya v. Mukasey*,

524 F.3d 1066, 1073 (9th Cir. 2008) (alterations in original)). In assessing this question, immigration judges are instructed to consider: "(i) Evidence of past torture inflicted upon the applicant; (ii) Evidence that the applicant could relocate to a part of the country of removal where he or she is not likely to be tortured; (iii) Evidence of gross, flagrant or mass violations of human rights within the country of removal, where applicable; and (iv) Other relevant information regarding conditions in the country of removal." 8 C.F.R. § 1208.16(c)(3).

**[17]** Reyes's claim to relief under CAT is implausible because he identifies no evidence of persecution occurring prior to his removal in 2001, nor does he identify any evidence of widespread human rights violations occurring in Guatemala prior to or during 2001. Reyes's claim principally relies on his testimony that gang members "beat me and tried to kill me" *after* he was returned to Guatemala. He also testifies that a close friend was murdered in Guatemala in 2009. These events occurred years after Reyes was removed and more than a decade after he first left Guatemala for the United States in 1991. His counsel states "[i]t is unclear what precisely motivated his departure" in 1991. While post-2001 events might suggest a basis upon which Reyes could seek deferral of removal now, they are not evidence on which an Immigration Judge in 2001 could have found it was more likely than not he would be tortured upon return to Guatemala. *See Dhital v. Mukasey*, 532 F.3d 1044, 1051 (9th Cir. 2008) ("[T]he petitioner must demonstrate that he would be subject to a '*particularized threat* of torture.'") (quoting *Lanza v. Ashcroft*, 389 F.3d 917, 936 (9th Cir. 2004)). To the contrary, his statements made in 2007—after being beaten by gang members—clearly indicate that he did not fear returning to Guatemala even after his removal in 2001.

Further, Reyes has presented no evidence of relevant country conditions in Guatemala in 2001, much less that flagrant violations of human rights were widespread there. The only evidence proffered beyond Reyes's declaration was a

*Newsweek* article from 2005 briefly mentioning that MS-13 had established itself in Guatemala.**¹³** This article does not suggest the type of widespread abuse that would support CAT relief based on country conditions alone. *Cf. Kamalthas v. INS*, 251 F.3d 1279, 1282-84 (9th Cir. 2001) (holding that the BIA erred in failing to "consider probative evidence in the record of country conditions which confirm that Tamil males have been subjected to widespread torture in Sri Lanka").

**[18]** In light of the fact that Reyes was effectively denied the assistance of counsel in 2001, we have considered the evidence presented now in the light most favorable to him. Yet even the best counsel cannot succeed on a claim that has no factual support, and the record here does not indicate any evidence in existence in 2001 upon which Reyes could have sought CAT relief. Accordingly, we hold that he has not demonstrated a plausible claim to relief from the 2001 removal order and was therefore not prejudiced by the violation of his due process right to counsel during his removal proceedings.

## IV. CONCLUSION

Reyes did not waive his right to counsel and was denied his due process right to counsel because he was not properly advised of his rights in a language that he could understand. We hold that this violation of his right to counsel was not inherently prejudicial, however. Because Reyes cannot demonstrate that he had a plausible claim to relief in 2001, he was not actually prejudiced as a result of the due process violations in his removal proceedings. Entry of the 2001 removal order was therefore not fundamentally unfair under 8 U.S.C. § 1326(d).

---

**¹³**In his briefing, Reyes's counsel references reports from U.S. government and non-governmental organizations finding widespread corruption in Guatemala, but these reports are neither identified in the briefing, nor have they been submitted to the court.

**AFFIRMED.**