Opinion by Judge W. FLETCHER; Dissent by Judge SILVER.
OPINION
W. FLETCHER, Circuit Judge:
Xóchitl Cisneros-Rodriguez (“Cisne-ros”), an undocumented alien, was convicted in 2009 of violating California narcotics laws and was subsequently placed in administrative removal proceedings. She was told by the Immigration and Customs *751 Enforcement (“ICE”) agent who conducted the proceeding that, because she had been convicted of an aggravated felony, an attorney could not help her. She was ordered removed in 2010. When Cisneros returned to the United States without permission in 2011, she was criminally charged with illegal reentry. She moved in the district court to dismiss the indictment on the ground that her 2010 removal order was fundamentally unfair because her due process rights had been violated. The district court denied the motion and Cisneros was convicted of illegal reentry.
We hold that the ICE agent who conducted Cisneros’s administrative removal proceeding violated her due process rights by telling her that an attorney would not have been able to help her when she was facially eligible for a U-visa, a form of hardship relief available to a person convicted of an aggravated felony. We further hold that Cisneros was prejudiced by the due process violation because it was plausible that Cisneros would have obtained a U-visa had she applied for one in 2010, notwithstanding the fact that she had already been placed in administrative removal proceedings. We therefore reverse and remand with instructions to dismiss the indictment and vacate the conviction.
I. Background
A. Factual Background
Xóchitl Cisneros-Rodriguez is a 32-year-old Mexican national who was brought to the United States as a child and has lived here, undocumented, for most of her life. She is married and has two sons. Her husband and sons are all United States citizens.
As a young adult, Cisneros had several encounters with the criminal justice system. She has been convicted of a number of California state misdemeanors. She has also been convicted of felony and misdemeanor fraud.
In 2006, Cisneros’s car was stolen by a woman named Monalisa Rodriguez. Cisne-ros reported the theft, and Rodriguez was convicted of larceny and served time in prison. One night in October 2008, after Rodriguez had been released from prison, she came to Cisneros’s home with a knife. She called Cisneros a “snitch” and claimed she would hurt Cisneros’s family if Cisne-ros did not “pay her back” by helping her sell methamphetamine. Over the next three months, until January 2009, Cisneros helped Rodriguez sell methamphetamine in and around San Jose, California. Rodriguez repeatedly threatened Cisneros during this period, hitting her on three separate occasions and telling her that if she did not cooperate, Rodriguez would hurt members of her family.
In January 2009, Cisneros and Rodriguez were arrested and charged with possession of methamphetamine for sale. The two women were both incarcerated at the Elmwood Correctional Facility in Santa Clara County. While incarcerated, Rodriguez repeatedly threatened Cisneros with violence, both to extort money and to dissuade her from testifying against Rodriguez. Approximately a week after the arrest, Rodriguez instructed Cisneros to call her mother and tell her to wire $300 to Rodriguez’s prison commissary account. If Cisneros did not do so, Rodriguez said, Cisneros would get “beat up.” When Cisneros’s mother did not send the money, Rodriguez took Cisneros to a bathroom in the prison and assaulted her. Cisneros’s mother then sent the money. Rodriguez then demanded that she send an additional $300.
In February, the jail staff moved Cisne-ros into another dormitory in- the jail, and later moved her into protective custody. Rodriguez continued to harass Cisneros, *752 sending her threatening notes through other inmates. One note instructed Cisne-ros to “keep saying the dope was yours in court.” Another instructed her to tell her mother to send additional money, adding, “Or do I need some one [sic] to go see your brother?” The harassment continued into the fall. In September, jail staff observed inmates “striking [Cisneros] in the head multiple times with both fists.” A report from that incident states that Cisneros suffered “multiple contusion[s] [to the] back of [her] head.” When shown a photograph of Rodriguez by an investigator, Cisneros said, unprompted, “Oh my god, she scares me.” She said that Rodriguez made her “go through hell.”
Around May 2009, as a result of reports by Cisneros and her mother, the Santa Clara County Sheriffs Office referred the case to the District Attorney. In December 2009, Cisneros testified at a preliminary hearing on extortion and other criminal charges brought against Rodriguez. The other witnesses at the hearing were Cisneros’s mother and an investigating officer. At the close of the hearing, the judge found probable cause to issue an information charging Rodriguez with one felony count of extortion, one felony count of dissuading a witness by use of force, and one count of misdemeanor battery. Cisneros was listed as the victim of all three crimes. In February '2010, Rodriguez entered a plea of nolo contendere to the charges and was sentenced to a year in prison, in addition to any sentence imposed on the methamphetamine charges.
Cisneros ultimately pled guilty to two counts of possessing a controlled substance for sale in violation of California Health and Safety Code § 11378, arising out of the January 2009 arrest and a prior arrest in November 2008. She was sentenced to one year of incarceration for each count.
B. Immigration Proceedings
On January 20, 2009, the day after she and Rodriguez were arrested, Cisneros was referred to ICE. She was interviewed at the Elmwood Correctional Facility by ICE Agent Steven Contreras. Contreras recorded on a form that Cisneros had been born in Mexico; that she had entered the United States without inspection; and that she was married. In October 2009, after Cisneros had pled guilty to violating California narcotics laws, ICE Agent Jose Linares reopened her file in order to prepare for removal proceedings. He recommended that ICE place Cisneros into administrative removal proceedings. Administrative removal proceedings are conducted by ICE agents rather than Immigration Judges.
On May 20, 2010, Cisneros was transferred to an ICE facility, where she was placed in an administrative removal proceeding conducted by Agent Linares. Part of what occurred on May 20 is disputed. Specifically, the parties dispute what Linares told Cisneros about her right to hire an attorney and whether he told her that an attorney would not help her. But the following facts are undisputed. Li-nares served Cisneros with an arrest warrant and a Notice of Intent to Issue a Final Administrative Removal Order. Cisneros signed the notice, admitting the charge of removability and waiving her right to contest it. She then signed a form admitting to having entered the United States unlawfully in 1994 and waiving her right to an attorney. Linares testified that the entire proceedings likely took somewhere between ten and fifteen minutes. Cisneros testified that the proceedings took about ten minutes.
Cisneros was removed to Mexico on the following day pursuant to a final administrative order of removal.
*753 C. District Court Proceedings
Cisneros returned to the United States without permission sometime in 2011. She was arrested in October 2011 and criminally charged with illegal reentry in violation of 8 U.S.C. § 1326. In December 2011, represented by counsel, Cisneros filed an application with U.S. Citizenship and Immigration Services (“USCIS”) for a U-visa, a form of hardship relief available to victims of crimes who have suffered mental or physical abuse and are helpful to law enforcement officials in prosecuting or investigating the crime. See Victims of Trafficking and Violence Protection Act of 2000, Pub. L. No. 106-386, § 1513, 114 Stat. 1464, 1533. As part of her application, Cisneros was required to obtain certification from a law enforcement officer that she had assisted in prosecuting a qualifying crime. A detective from the Santa Clara County Sheriffs Office certified that Cisneros had assisted in prosecuting Rodriguez for extortion.
In district court, Cisneros moved to dismiss the indictment on the ground that her due process rights had been violated in the administrative removal proceeding on May 20, 2010. She argued that her waivers of her rights to appeal and to counsel had not been “knowing and voluntary” because Agent Linares had not followed ICE procedures and had affirmatively misadvised her about her right to counsel and about the help an attorney could have provided. The district judge noted that he generally resolved motions to dismiss an indictment in a § 1326 case “on the basis of affidavits,” but that in this circumstance he would hold an evidentiary hearing. In the hearing that followed, Cisneros and Li-nares testified about the circumstances of Cisneros’s removal.
Cisneros testified that on May 20 Agent Linares had instructed her to sign forms without indicating to her what they were. According to Cisneros, when Linares handed her the notice on which she admitted her removability, - he had folded over the first page which contained the charge itself, and he had pre-checked the boxes admitting the charge and waiving her right to contest it. She testified that Linares did not translate the charges or allegations into Spanish, and that he did not tell her she had the right to rebut or contest the allegations or to appeal his decision. She also testified that, had he told her these things, she would have contested her removal. She testified that Linares had told her “that if I wanted to leave in the plane that was about to leave that I would have to sign this [notice].” She described Li-nares’s tone as “Just harsh. Quick. Rude.”
Cisneros testified that Agent Linares had affirmatively misadvised her about whether she could speak to an attorney, and about whether an attorney would help her. ICE is required by regulation to provide aliens in removal proceedings with a list of free legal services. See 8 C.F.R. § 238.1(b)(2)(iv). She testified that she was “certain” that Linares had not provided her with such a list. Cisneros further testified that Linares did not tell her that she had a right to hire an attorney and told her that because she “had big charges” she “could not see a judge.” In her affidavit filed in the district court, Cisneros testified that Linares told her that “a lawyer would not help me, so I did not ask for an attorney.”
Cisneros testified on direct examination that she had told Agent Linares during the May 20 interview that she “had an extortion case in which I had been a victim.” On cross examination, however, the government sought clarification because Cisneros’s written declaration seemed to indicate that she had not told Linares about her extortion case. Cisneros clari *754 fied that she had mentioned her extortion case to someone other than Linares:
Q: So going back to your declaration, it states that you explained to an officer, and the way the declaration is written, it appears to be someone other than Agent Linares. You explained that you had an extortion case.
A: Okay. That question that you asked ..., when I was looking at the immigration people that were present, I remember that he interviewed me in January, but it was — well, it was another person who came when I was already under protection. It wasn’t the same person.
Cisneros testified further that she had mentioned her extortion case to someone other than Contreras.
Q: So it was not either of the two gentleman [sic] you saw [in court] on Thursday [Agent Linares or Agent Contreras]?
A. The first one was — I don’t remember, his name is like Contreras. All right. He went to see me when I was already in the dorms, but it wasn’t him I said to — well, that I speak about the fact that I had a problem with extortion.
Q: Okay.
Agent Linares testified that he had no recollection of what happened on May 20. He conceded that he had no memory of Cisneros and no memory of her removal proceeding. Linares was asked, “Do you recognize her?” He answered, “No.” Li-nares was then asked, “Do you have any personal memory of her?” He again answered, “No.” Linares was finally asked, “[Y]ou have no personal memory of these proceedings ...?” He answered, “No, no.” Linares said that it was “difficult for [him] to remember each particular case” because he “processes] so many.”
Agent Linares testified as to what he “would ordinarily have done” in conducting an administrative removal proceeding. He testified that his ordinary practice is to read the allegations and charge to the alien; that he ordinarily explains everything on the notice to the alien, including that the alien has a right to an attorney; and that he believed, based on his ordinary practice, that he would have provided Cisneros with a list of free legal service providers. Linares further testified, again based on what he described as his ordinary practice, that because Cisneros spoke Spanish, he would have conducted the removal proceedings in Spanish. On cross-examination, Linares admitted that, although he had testified to what he described as his “ordinary practice,” Cisne-ros’s administrative removal proceeding had been only the “second or third” such proceeding he had ever conducted. Li-nares also admitted that when he conducted Cisneros’s administrative removal proceeding, he had recently been disciplined and demoted to the position in which he conducted administrative removal hearings.
The district judge issued a written order denying Cisneros’s motion to dismiss the indictment. The judge identified the key question as whether Cisneros’s due process rights had been violated during her administrative removal proceedings, a question as to which he wrote that “the testimony is in conflict.” The judge wrote that “[a]s Linares testified that it is his habit to provide all aliens he processes with a list of attorneys, the Court finds it unlikely that none of the aliens being processed at this time were so provided.” However, at .the same time, the judge “acknowledge[d] that evidence of disciplinary action taken against Linares by ICE was introduced as impeachment during cross-examination.” The judge wrote that “Cisneros Rodriguez’[s] testimony about her desire to have counsel was inconsistent at best.” But the district court made no *755 adverse credibility finding as to either Cisneros or Linares.
With respect to whether Cisneros told Linares about her extortion case and the possibility of a U-visa, the district judge wrote, “The Court finds that there is no credible evidence in the record that defendant told Linares that she wanted to see a lawyer or an immigration judge because she thought she had the basis for an application for a U-Visa, or even that she had been a victim of extortion.” He wrote, a few pages later, “[Tjhere is nothing at all in the record to suggest that in their meeting Cisneros Rodriguez told Linares about the extortion case, or her desire to file for a U Visa.” The judge explained the basis for these statements, pointing out that Cisneros herself had testified on cross examination, when the government sought clarification of her testimony, that she had told neither Linares nor Contreras of her extortion case or any wish to apply for a U-visa.
The district judge found that “[Cisneros] and Linares had a discussion about counsel.” But the important question, he explained, was “whether in these discussions Linares provided [Cisneros] with information which was inaccurate or misleading and which therefore interfered with her right to counsel.” With respect to this question, he concluded that “based on the information available to Linares about Cisneros Rodriguez’[s] criminal record, assuming arguendo, Linares did tell Cisne-ros Rodriguez that a lawyer could not help her, the Court finds that, as a factual matter, Linares did not mislead [Cisne-ros].” That is, the district court reasoned that even “assuming arguendo ” that Agent Linares told Cisneros that an attorney would be of no use, as Cisneros testified, there was no due process violation because Linares’s advice was correct.
Based on his conclusion that there had. been no due process violation, the district judge denied Cisneros’s motion to dismiss the indictment. After a bench trial, Cisne-ros was convicted of violating 8 U.S.C. § 1326, and was sentenced to 30 months in prison.
Cisneros appealed the denial of her motion to dismiss the indictment. After she was convicted and while her appeal was pending, her application for a U-visa was denied.
II. Standard of Review
We review the district court’s denial of a motion to dismiss an indictment brought pursuant to 8 U.S.C. § 1326(d) de novo. United States v. Reyes-Bonilla, 671 F.3d 1036, 1042 (9th Cir.2012). We review the district court’s findings of fact for clear error. Id.
III. Discussion
“To convict an alien criminal defendant of illegal reentry under 8 U.S.C. § 1326, the government must prove that the alien left the United States under order of exclusion, deportation, or removal, and then illegally reentered.” United States v. Barajas-Alvarado, 655 F.3d 1077, 1079 (9th Cir.2011) (internal footnote omitted). An alien charged with illegal reentry under § 1326 “has a Fifth Amendment right to collaterally attack [her] removal order because the removal order serves as a predicate element of [her] conviction.” United States v. Ubaldo-Figueroa, 364 F.3d 1042, 1047 (9th Cir.2004); see also United States v. Mendoza-Lopez, 481 U.S. 828, 837-38, 107 S.Ct. 2148, 95 L.Ed.2d 772 (1987). That right is codified at 8 U.S.C. § 1326(d).
To mount a collateral attack under § 1326(d),
a defendant must, within constitutional limitations, demonstrate (1) that [she] *756 exhausted all administrative remedies available to [her] to appeal [her] removal order, (2) that the underlying removal proceedings at which the order was issued improperly deprived [her] of the opportunity for judicial review, and (3) that the entry of the order was fundamentally unfair.
Ubaldo-Figueroa, 364 F.3d at 1048; see 8 U.S.C. § 1326(d).
The parties agree that the third question, whether the entry of Cisneros’s removal order was “fundamentally unfair,” is dispositive here. See United States v. Gomez, 757 F.3d 885, 892 (9th Cir.2014) (noting that “[a] defendant can establish the first two prongs of § 1326(d) by showing that he was denied judicial review of his removal proceeding in violation of due process”); Ubaldo-Figueroa, 364 F.3d at 1049-50 (to similar effect). An underlying order is “fundamentally unfair” if (1) a defendant’s due process rights were violated by defects in her underlying deportation proceeding, and (2) she suffered prejudice as a result of the defects. UbaldoFigueroa, 364 F.3d at 1048. If Cisneros’s final order of removal was entered in violation of her due process rights, and if she suffered prejudice as a result, she is deemed to have “exhausted all administrative remedies available to [her]” and to have been “deprived ... of the opportunity for judicial review.” See id. at 1048. For the following reasons, we hold that the entry of the order was fundamentally unfair.
A. Due Process Violation
The district judge wrote that he was willing to assume that Cisneros testified truthfully when she said that Agent Li-nares advised her that an attorney could not help her. Cisneros argues that Li-nares’s advice violated her due process rights, on the ground that he thereby improperly obtained an invalid waiver of her right to counsel. We agree.
“Although there is no Sixth Amendment right to counsel in an immigration hearing, Congress has recognized it among the rights stemming from the Fifth Amendment guarantee of due process that adhere to individuals that are the subject of removal proceedings.” Tawadrus v. Ashcroft, 364 F.3d 1099, 1103 (9th Cir.2004). This right extends to administrative removal proceedings. Indeed, ICE is required by statute to inform aliens placed in administrative proceedings of their right to counsel. See 8 U.S.C. § 1228(b)(4)(B) (“[T]he alien shall have the privilege of being represented (at no expense to the government) by such counsel, authorized to practice in such proceedings, as the alien shall choose.”); 8 C.F.R. § 238.1(b)(2)® (“[The Notice of Intent] shall advise that the alien: has the privilege of being represented, at no expense to the government, by counsel of the alien’s choosing....”).
A waiver of counsel must be “knowing and voluntary.” See United States v. Ramos, 623 F.3d 672, 682 (9th Cir.2010). Improperly obtaining such a waiver constitutes a due process violation. Id.; see also Reyes-Bonilla, 671 F.3d at 1045-46. “The government bears the burden of proving valid waiver in a collateral attack of the underlying removal proceedings.” Ramos, 623 F.3d at 680. We “indulge every reasonable presumption against waiver” and do not “presume acquiescence in the loss of fundamental rights ..., especially where an uncounseled individual purportedly waived” her right to counsel. Gomez, Wl F.3d at 894 (internal citations and quotation marks omitted).
The Record of Sworn Statement form that Cisneros signed on May 20 stated that *757 she had “the right to consult with an attorney.” The second question on the form asks, “Are you willing to waive these rights and talk with me?” “Sí” (“yes”) is written on the form in answer to that question. But Cisneros testified that, before she gave this answer, Linares had dissuaded her from hiring an attorney. Specifically, she testified that Linares told her that an attorney “would not help [her].” She testified further that, had Li-nares not dissuaded her from exercising her right to counsel, she would have hired an attorney.
A waiver of fundamental rights, we have repeatedly held, “must be considered and intelligent.” Gomez, 757 F.3d at 893 (internal quotation marks omitted); see also Reyes-Bonilla, 671 F.3d at 1043; Ramos, 623 F.3d at 680. It is difficult to comprehend how an unrepresented alien could execute a “considered and intelligent” waiver of her right to counsel if she has been informed by an ICE agent, just prior to executing the waiver, that the exercise of that right would be futile.
The district judge did not make a factual finding that Agent Linares had told Cisneros that an attorney could not help her. Instead, he simply assumed that Linares had done so. The judge nonetheless held that there had been no due process violation because, he wrote, “as a factual matter, Linares did not mislead [Cisneros].” In the district judge’s view, that is, Linares’s statement that an attorney could not help her was accurate. However, as we explain below, Linares’s advice was not accurate, and had the effect of misleading Cisneros. We hold that if an ICE agent erroneously advises an uncounseled alien in an administrative removal proceeding that an attorney will not be able to provide assistance, any waiver of the right to counsel based on that advice is invalid because it is not “considered and intelligent.”
Because the district judge was mistaken when he concluded that Agent Linares’s advice was correct, a critical question becomes whether, in fact, Linares advised Cisneros that an attorney could not help her. The district judge assumed that Li-nares had so advised Cisneros but he made no factual finding to that effect. We would ordinarily remand to the district court to allow the district judge who heard the live testimony to do factfinding. In this case, however, we think it appropriate to decide the factual issue ourselves.
The district judge who decided this case has retired. If we were to remand to the district court for factfinding, the district judge assigned the case on remand would be in no better position than we are to decide the factual question. That judge would read the transcript, as we can, and would not be able, any more than we are able, to judge the credibility of Cisneros based on personal observation. It is possible, of course, that the district judge assigned the case on remand would elect to rehear the testimony taken by the first judge. But given that Cisneros has now been removed and is currently in Mexico, the likelihood that the new judge would conduct a hearing at which the key witnesses, including Cisneros, would testify is sufficiently remote that we are unwilling to remand based on an assumption that the new judge would do so.
Cisneros testified that Agent Linares told her that an attorney “would not help [her].” Linares could not directly contradict Cisneros because, as he testified, he had no recollection of her or her proceeding. He testified about his ordinary practice, and testified that his practice was to explain to aliens in such proceedings that they have the right to counsel. But Linares’s testimony was suspect. He admitted that Cisneros’s removal was only the “second or third” ad *758 ministrative removal proceeding he had ever conducted. Further, on cross-examination he conceded that he was conducting administrative removal proceedings in San Jose as a result of having been demoted from his previous position as ICE Chief of Detention in San Francisco. He had been demoted because, contrary to ICE regulations, he had kept in a safe in his office between 260 and 300 bags of aliens’ personal possessions, and because he had made false accusations against, and derogatory and discriminatory statements about, a fellow ICE employee. As a result of the false accusations and the statements, ICE had been obliged to pay $50,000 to the affected employee. Li-nares’s termination had been proposed during the disciplinary process, but in the end he was only demoted and transferred.
Cisneros testified consistently that she had wanted an attorney. She stated that she was “certain” that she had not been provided with a list of attorneys. • And she testified without ambiguity or hesitation that Linares had advised her that an attorney could not help her. While she was halting and uncertain regarding whether and when she told the ICE agents that she had been the victim of extortion, she was consistent in her statements that she had intended to retain an attorney until Li-nares told her that an attorney could not help.
Our dissenting colleague concludes that the district judge made an implicit credibility finding, and found that Cisneros testified falsely on the key question in the case. She writes, “[Rjeading the opinion as a whole, the district court found Cisne-ros incredible regarding what Linares told her about counsel.” Our colleague bases her conclusion on two statements by the district judge. First, she points out that the judge wrote that there was “no credible evidence in the record that [Cisneros] told Linares ... that she had been a victim of extortion.” We agree with this statement by the district judge, but it does not amount to an explicit, or even an implicit, credibility finding. As the district judge recognized in explaining the statement, Cisneros herself testified that she had not told Linares (or Contreras, for that matter) that she had been a victim of extortion. Second, our dissenting colleague points out that the judge found it “unlikely that none of the aliens being processed at this time were ... provided [with lists of counsel].” We are willing to agree with this statement by the district judge, too, but it is not, any more than the first statement, an adverse credibility finding “regarding what Linares told [Cisne-ros].” The judge referred to the likelihood that none of the aliens was provided with counsel lists; the court found that “unlikely.” Even if that had been the question before the court, the most the judge found was it was “unlikely” that Linares never provided a counsel list to any alien. But that was not a question before the court. The question was whether a particular alien — Cisneros—had been provided with such a list, and whether Linares had told her that an attorney could not help her.
Based on our independent review of the record, we conclude that Agent Linares told Cisneros that an attorney would not help her and thereby persuaded Cisneros to waive her right to obtain an attorney. We therefore hold that Linares obtained an invalid waiver of Cisneros’s right to counsel, in violation of her due process rights.
B. Prejudice
That Cisneros’s Fifth Amendment due process rights were violated does not end the inquiry. In order to show that her administrative removal proceeding was *759 “fundamentally unfair,” she must show that she was prejudiced by the violation. See Ubaldo-Figueroa, 364 F.3d at 1048. Cisneros contends that she was prejudiced by the due process violation because, had she obtained counsel, it is plausible that she would have applied for and obtained a U-visa, a temporary visa available to certain crime victims. See 8 U.S.C. § 1101(a)(15)(U). The government concedes that Cisneros was facially eligible for a U-visa in 2010. But it argues that Cisneros nonetheless could not have been prejudiced by a due process violation. First, the government argues that Cisne-ros was statutorily barred from applying for any form of relief, including a U-visa, because she had been put in administrative removal proceedings. Second, the government argues that, even if Cisneros was not barred by statute, it is not plausible that she would have obtained a U-visa had she applied for one in 2010. We disagree with both arguments.
1. Statutory Bar
The general rule is that a defendant who has been convicted of an aggravated felony “cannot show that [s]he was prejudiced by defects in [her] underlying [removal] proceedings ... because noncitizens convicted of aggravated felonies are ... ineligible for almost all forms of discretionary relief.” United States v. Alvarado-Pineda, 774 F.3d 1198, 1201 (9th Cir.2014) (internal citations omitted). Cisneros, however, argues that she falls within an exception to the rule. Cisneros argues that she was eligible for a U-visa, a form of relief available to victims of certain qualifying crimes who have suffered mental or physical abuse and assist in the prosecution or investigation of the crime. See id. at 1201-02; see also Victims of Trafficking and Violence Protection Act of 2000, Pub. L. No. 106-386, § 1513, 114 Stat. 1464, 1533. Conviction for an aggravated felony does not necessarily disqualify an applicant from obtaining a U-visa. An applicant for a U-visa may apply to waive grounds that would ordinarily bar her admission to the United States, including certain criminal convictions. 8 U.S.C. § 1182(d)(14).
An applicant for a U-visa must demonstrate that (1) she has suffered “substantial physical or mental abuse” in connection with a qualifying crime; (2) she possesses information concerning the crime; (3) she “has been helpful, is being helpful, or is likely to be helpful” to an official who is investigating or prosecuting the crime; and (4) the qualifying crime violated federal or state law. See 8 U.S.C. § 1101(a)(15)(U)(i). A U-visa applicant must obtain a certification from a law enforcement official in order to qualify for the visa. 8 C.F.R. § 214.14(c)(2)(i). It is undisputed that Cisneros met these criteria. She was the victim of extortion, a qualifying crime; she had suffered abuse in connection with the crime; and, as the certification she received from the Santa Clara County Sheriffs Office attests, she had rendered substantial assistance in the prosecution of the crime’s perpetrator, Rodriguez. The government nonetheless argues that, as a statutory matter, Cisneros was not eligible to obtain a U-visa, and therefore could not have been prejudiced by any due process violations.
Under 8 U.S.C. § 1228, the government may place an undocumented alien convicted of an aggravated felony either into removal proceedings before an Immigration Judge or into administrative removal proceedings before an ICE agent. See 8 U.S.C. § 1228(b)(1). The governing regulations explicitly state that an ICE agent shall place an undocumented alien in administrative removal proceedings, rather *760 than removal proceedings before an Immigration Judge, only if he is “satisfied that there is sufficient evidence” that the alien is eligible to be placed in these proceedings. 8 C.F.R. § 238.1(b)(1). The regulations further permit an ICE agent to transfer an undocumented alien to removal proceedings before an Immigration Judge if the agent “finds that the alien is not amenable to removal” by administrative removal proceedings. Id. § 238.1(d)(2)(iii). Agent Linares testified before the district court, consistent with these regulations, that he had the authority to determine, subject to his supervisors’ approval, whether Cisneros would be placed and kept in administrative removal proceedings or transferred to removal proceedings before an Immigration Judge.
The government argues that, once Agent Linares decided to place Cisneros in administrative proceedings rather than proceedings before an Immigration Judge, her right to apply for a U-visa was irrevocably extinguished. The government relies on 8 U.S.C. § 1228(b)(5), which provides that an undocumented alien placed in administrative removal proceedings will not “be eligible for any relief from removal that the Attorney General may grant in the Attorney General’s discretion.” 8 U.S.C. § 1228(b)(5). The fatal weakness of the government’s argument is that an ICE agent can take an undocumented alien already put in administrative removal proceedings out of those proceedings and put her into removal proceedings before an Immigration Judge. Indeed, the regulations explicitly provide that authority, and Agent Linares conceded in his testimony in the district court that he could have exercised it. See 8 C.F.R. § 238.1(d)(2)(iii). Therefore, while an undocumented alien placed into administrative removal proceedings may be barred from applying for discretionary relief during those proceedings, the bar is contingent on the agent’s decision to place and keep her in those proceedings.
Our prior opinions in United States v. Calderon-Segura, 512 F.3d 1104 (9th Cir.2008), and United States v. Garcia-Martinez, 228 F.3d 956 (9th Cir.2000), are not to the contrary. In those cases, we noted that undocumented aliens convicted of aggravated felonies could not have been prejudiced by due process violations because under § 1228(b)(5) they were “statutorily ineligible for any discretionary relief.” CalderonSegura, 512 F.3d at 1108; see also Garciar-Martinez, 228 F.3d at 964. But neither defendant identified a form of relief, like the U-visa, that he plausibly could have obtained had he been placed or transferred into proceedings before an Immigration Judge. By contrast, in United States v. Reyes-Bonilla, we engaged in an extensive analysis of whether it was plausible that the defendant would have obtained deferral of removal under the Convention Against Torture, one of the few other forms of relief available to an undocumented alien convicted of an aggravated felony. See 671 F.3d at 1050-52. We did not treat the fact that the defendant had been placed into administrative proceedings as a bar to all relief from removal, notwithstanding the text of § 1228(b)(5). We instead asked the same question we ask today: whether the defendant had identified a form of relief it was plausible he would have obtained absent the due process violation. In many cases, such as in Calderon-Segura and Garcia-Martinez, the answer will be “no.” But the reason for that answer is not that the defendant has been placed into administrative removal proceedings.
We therefore reject the government’s argument that § 1228(b)(5) operates as an absolute bar to a undocumented alien placed in administrative removal proceed *761 ings. We hold, instead, that an undocumented alien attacking an administrative removal order may argue that a due process violation that occurred during her removal proceedings was prejudicial if (a) she identifies a form of relief for which she was eligible to apply, notwithstanding her aggravated felony conviction, and (b) she establishes that it was “plausible” that, but for the due process violation, she would have been permitted to apply for, and would have obtained, such relief. Such a situation is rare, but § 1228(b)(5) does not foreclose the possibility of relief.
2. Plausibility
To succeed in demonstrating that her 2010 removal order was fundamentally unfair, Cisneros must show that she was prejudiced by the due process violations in the underlying removal proceedings. To do so, Cisneros “does not have to show that [she] actually would have been granted relief.” Ubaldo-Figueroa, 364 F.3d at 1050. “Instead, [she] must only show that [she] had a ‘plausible’ ground for relief from deportation.” Id. (quoting United States v. Arrieta, 224 F.3d 1076, 1079 (9th Cir.2000)). “[E]stablishing ‘plausibility’ requires more than establishing a mere ‘possibility.’ ” Barajas-Alvarado, 655 F.3d at 1089. But Cisneros “need not prove that relief was probable.” United States v. Raya-Vaca, 771 F.3d 1195, 1207 (9th Cir.2014) (emphasis added). That is, Cisneros needs to show that relief was more than “possible,” but she need not show that it was “probable.”
Here, Cisneros must show that, but for the due process violation, it is both “plausible” that she would have been permitted to apply for a U-visa in 2010 and “plausible” that she would have obtained one had she applied. We conclude that she has made both showings.
First, we have little trouble concluding it is plausible that, had Agent Linares not told Cisneros that a lawyer would not help her, she would have been able to apply for a U-visa. The government does not dispute that Cisneros would have been able to apply for a U-visa had she not been placed into administrative proceedings. And Li-nares conceded that, had he known Cisne-ros was eligible for a U-visa, he would have so informed his supervisors. We have no doubt, as the district court concluded, that Linares did not know that Cisneros was facially eligible for a U-visa. We also have no doubt that a competent lawyer would have discovered that she was eligible for one, would have informed ICE, and would thereby have prevented Cisne-ros’s immediate removal from the United States. Indeed, a formal Department of Homeland Security (“DHS”) policy memorandum states that it is DHS’s policy to stay the proceedings and remoyal of an alien who is facially eligible for a U-visa, even after he or she has been issued a final order of removal. See Memorandum from Peter S. Vincent, Principal Legal Advisor, U.S. Immigration & Customs Enforcement to the Office of the Principal Legal Advisor (Sept. 25, 2009), available at http://l.usa. gov/lGqVkYK. Had Cisneros been granted a U-visa subsequent to the issuance of the removal order, the removal order would have been canceled. See 8 C.F.R. § 214.14(c)(5)(i).
Second, although this is a closer question, we conclude that it is plausible that Cisneros would have obtained a U-visa had she applied for one in 2010. According to data compiled by DHS, USCIS ultimately grants over 70 percent of U-visa applications. See Number of 1-918 Petitions for U Nonimmigrant Status (Victims of Certain Criminal Activities and Family Members) by Fiscal Year, Quarter, and Case Status 2009-2015, U.S. Citizenship & Immigration Serv., available at http://l. *762 usa.gov/18LyQG3. Though “statistics alone cannot establish the plausibility of relief,” Raya-Vaca, 771 F.3d at 1209, the data provides a reasonable baseline against which to assess the plausibility of relief in Cisneros’s individual case.
Measured against that baseline, we find it plausible that Cisneros would have obtained a U-visa in 2010. ■ It is true that Cisneros had a substantial criminal record. Although the record is not entirely clear, it appears she was convicted of a variety of state misdemeanors and felonies. But until the fall of 2008, when she became involved with Rodriguez, Cisneros had never been involved in any drug-related crime and had never been sentenced to more than nine months in county jail. Further, there were significant reasons why Cisne-ros might have warranted a favorable exercise of discretion. She had lived most of her life in the United States; she was married to a U.S. citizen; and she was raising two U.S. citizen children.
Cisneros had also been a critical witness in the prosecution of Rodriguez for extortion. The government argues to us that Rodriguez’s crime was relatively minor, and that Cisneros’s role in assisting the Santa Clara County Sheriffs Office was not substantial. To some extent, the government is making a counterfactual argument, for Cisneros was both the victim of, and the primary witness against, Rodriguez. Further, we see nothing in the text or history of the Victims of Trafficking and Violence Protection Act that would support the government’s limited reading of the purpose and availability of U-visas. Congress’s purpose in establishing the U-visa was to protect “[a]U women and children who are victims of [qualifying] crimes,” not merely those who have information or assistance to provide regarding high-profile crimes. See Pub. L. No. 106-386, § 1513(a)(1)(B), 114 Stat. 1464, 1533 (2000) (emphasis added). Congress also intended to “strengthen the ability of law enforcement agencies to detect, investigate, and prosecute” all qualifying crimes, not merely those crimes that the government might conclude in retrospect, and in the context of later litigation, are significant. Id. § 1513(a)(2)(A).
Finally, we do not accord significant weight to the fact that Cisneros later applied for a U-visa and was rejected. Like the petitioner in Torres-Tristan v. Holder, 656. F.3d 653, 655 (7th Cir.2011), upon which the government relies, Cisneros applied for a U-visa only after she had already violated 8 U.S.C. § 1326 by re-entering the United States. See id. at 655. The fact that USCIS rejected her application after she had been criminally convicted in 2013 of illegal reentry has little bearing on whether she would have been successful had she applied for a U-visa in 2010, before she had been ordered removed and before her subsequent reentry.
We conclude that had Cisneros applied for a U-visa in 2010, it was plausible that she would have obtained one.
Conclusion
Based on the foregoing, we conclude that the entry of Cisneros’s administrative removal order in 2010 was “fundamentally unfair.” We hold that Cisneros’s due process rights were violated when Agent Li-nares told her that an attorney would not help her. We also hold that Cisneros was prejudiced by the violation because, in its absence, it was plausible that she would have been transferred from administrative removal proceedings to removal proceedings before an immigration judge, and that she would then have sought and obtained a U-visa. We therefore reverse and remand with instructions to dismiss Cisneros’s indictment and vacate her conviction.
*763 REVERSED and REMANDED with directions. Cisneros’s motion to supplement the record on appeal is denied as moot.