**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

ELADIO GOMEZ-VELAZCO,

*Petitioner*,

v.

JEFFERSON B. SESSIONS III, Attorney General,

*Respondent*.

Nos. 14-71747
14-73303

Agency No.
A205-829-885

OPINION

On Petition for Review of an Order of the
Department of Homeland Security

Argued and Submitted July 14, 2017
Portland, Oregon

Filed January 10, 2018

Before: Paul J. Watford and John B. Owens, Circuit
Judges, and Gloria M. Navarro,* Chief District Judge.

Opinion by Judge Watford;
Dissent by Judge Navarro

---

*The Honorable Gloria M. Navarro, Chief United States District Judge for the District of Nevada, sitting by designation.

## SUMMARY[**]

### Immigration

The panel denied Eladio Gomez-Velazco's petitions for review from the Department of Homeland Security's final administrative order of removal under 8 U.S.C. § 1228(b), concluding that Gomez-Velazco's due process claim, based on his contention that he was denied the right to counsel, failed because he made no showing of prejudice.

Gomez-Velazco argued that DHS officers violated his right to counsel by pressuring him to concede removability without advice of counsel in his proceedings under 8 U.S.C. § 1228(b), a form of summary removal proceedings in which he did not have a hearing before an immigration judge. The panel concluded that it had jurisdiction to review Gomez-Velazco's constitutional claim and assumed, without deciding, that the officers' conduct violated his right to counsel.

The panel held that Gomez-Velazco was required to show prejudice in order to prevail on his claim, rejecting his contention that, in the context of a due process violation based on the denial of the right to counsel, prejudice should be conclusively presumed and automatic reversal should follow. The panel concluded that, at least in cases like that of Gomez-Velazco, where an individual is in administrative removal proceedings under 8 U.S.C. § 1228(b), does not waive the 14-day waiting period for judicial review, and is

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

allowed to consult with counsel before the removal order is executed, a showing of prejudice is required. The panel further concluded that Gomez-Velazco failed to establish prejudice.

Dissenting, Chief District Judge Navarro wrote that she would grant the petition for review and vacate the final administrative order of removal. Judge Navarro would first make the distinct finding that Gomez-Velazco's right to counsel was violated, and would hold that no prejudice is required to vacate the order, and that even if prejudice were required, Gomez-Velazco demonstrated sufficient prejudice.

## COUNSEL

Navid David Shamloo (argued), Portland, Oregon, for Petitioner.

Leslie McKay (argued) and Blair T. O'Connor, Assistant Directors; Juria L. Jones, Trial Attorney; Office of Immigration Litigation, Civil Division, United States Department of Justice Washington, D.C.; for Respondent.

**OPINION**

WATFORD, Circuit Judge:

Under the Immigration and Nationality Act, the Department of Homeland Security (DHS) can seek to remove non-citizens from the United States through several different means. The most formal process involves a hearing in immigration court before an immigration judge, at which the individual to be removed can contest the charges against him and request various forms of relief from removal. *See* 8 U.S.C. § 1229a. Today, however, most non-citizens are ordered removed through streamlined proceedings—expedited removal, administrative removal, and reinstatement of removal—that do not involve a hearing before an immigration judge. *See* Jennifer Lee Koh, *Removal in the Shadows of Immigration Court*, 90 S. Cal. L. Rev. 181, 183–84 (2017); Shoba Sivaprasad Wadhia, *The Rise of Speed Deportation and the Role of Discretion*, 5 Colum. J. Race & L. 1, 2–3 (2014). The proceedings are summary in nature and conducted by front-line immigration enforcement officers employed by DHS.

This case involves administrative removal under 8 U.S.C. § 1228(b). A DHS officer ordered Eladio Gomez-Velazco, a native and citizen of Mexico, removed from the United States. Gomez-Velazco contends that his due process rights were violated because he did not have counsel present at the outset of the removal process. We will assume that a violation occurred. The question we address is whether Gomez-Velazco must show that he was prejudiced by the violation. We conclude that he must and that he has not done so. We therefore deny his petitions for review.

I

Before discussing the facts of Gomez-Velazco's case, it will help to begin with a brief overview of how administrative removal works.  Section 1228(b) authorizes DHS to order a limited class of non-citizens removed from the country without affording them a hearing before an immigration judge.  To invoke § 1228(b), DHS must establish that the individual to be removed: (1) is not a citizen of the United States; (2) has not been lawfully admitted for permanent residence; and (3) has been convicted of an aggravated felony.  8 U.S.C. § 1228(b)(1), (2); 8 C.F.R. § 238.1(b)(1). Proceedings under § 1228(b) are summary in nature because if DHS establishes those three predicates, the individual is conclusively presumed removable and categorically ineligible for most forms of discretionary relief from removal.  8 U.S.C. § 1228(b)(5), (c); *see United States v. Arrieta*, 224 F.3d 1076, 1080–81 (9th Cir. 2000).

DHS commences administrative removal proceedings by serving you with a "Notice of Intent to Issue a Final Administrative Removal Order."  8 C.F.R. § 238.1(b)(2). The notice must allege each of the three predicates necessary to trigger eligibility for administrative removal. § 238.1(b)(1), (b)(2)(i).  The notice must also advise you of certain rights, among them the right to be represented by counsel of your choosing at no expense to the government, the right to rebut the charges against you, and the right to request withholding of removal if you fear persecution or torture in the country to which you would be removed. § 238.1(b)(2)(i).

Upon service of the notice, you have ten days to file a response.  § 238.1(c)(1).  In the response, you can (among

other things) attempt to rebut the charges, request an opportunity to review the government's evidence, and request withholding of removal.  Alternatively, you can waive the right to pursue any of these options and concede that you are removable as charged.

If you do not file a response, or if you concede that you are removable as charged, a DHS official known as the deciding officer will issue a "Final Administrative Removal Order," which for ease of reference we will simply call a removal order.  § 238.1(d)(1).  To allow an opportunity for judicial review, the order may not be executed for 14 days unless you waive that waiting period in writing.  8 U.S.C. § 1228(b)(3); 8 C.F.R. § 238.1(f)(1).

If the deciding officer issues a removal order and you fear persecution or torture in the country to which you would be removed, the deciding officer must refer the case to an asylum officer to conduct a reasonable fear interview. 8 C.F.R. § 238.1(f)(3).  If the asylum officer determines that your fear of persecution or torture appears reasonable, the case is transferred to an immigration judge for a hearing to determine whether you are entitled to withholding of removal.  § 208.31(e).  If the asylum officer determines that you do not have a reasonable fear of persecution or torture, you can seek review of that determination by an immigration judge.  § 208.31(g).  But if the adverse reasonable fear determination is ultimately upheld, the removal order may then be executed.

With that background in mind, we can turn to the facts of this case.  DHS officers determined that Gomez-Velazco, then confined in county jail, appeared to be eligible for removal under § 1228(b).  Shortly after Gomez-Velazco was

released, DHS officers took him into custody pursuant to a warrant issued by the agency. The officers served him with a Notice of Intent to Issue a Final Administrative Removal Order. The notice alleged that Gomez-Velazco is not a citizen of the United States; that he has not been lawfully admitted for permanent residence; and that he has been convicted of an aggravated felony, namely, second-degree rape under Oregon law. The notice advised Gomez-Velazco of his right to contest the charges and his right to be represented by counsel of his choosing at no expense to the government.

The officers attempted to take a formal sworn statement from Gomez-Velazco, but he refused to give one without his attorney present. The DHS officers knew Gomez-Velazco had retained an attorney because two months earlier the attorney had notified them of Gomez-Velazco's pending application for a U-visa. *See* 8 U.S.C. § 1101(a)(15)(U). Although Gomez-Velazco refused to provide a sworn statement, he nonetheless admitted the allegations in the notice and conceded that he was removable as charged. He did not claim fear of persecution or torture in Mexico, but he declined to waive the 14-day waiting period for execution of the removal order. He made each of these decisions without the benefit of counsel's advice because his attorney was not present.

Immediately after Gomez-Velazco conceded that he was removable as charged, and before he had a chance to consult with his attorney, the deciding officer issued a removal order under § 1228(b). Because Gomez-Velazco had not waived the 14-day waiting period, he was not removed from the country, and before the waiting period expired his attorney filed a petition for review in this court challenging the

validity of the removal order. We issued a stay of removal pending our resolution of the petition, which remains in effect.

## II

Gomez-Velazco argues that the DHS officers violated his right to counsel by pressuring him into conceding removability without the advice of counsel, even after he told them that he did not want to give a sworn statement until he could speak with his attorney. We have jurisdiction to review this constitutional claim under 8 U.S.C. § 1252(a)(2)(D). As mentioned at the outset, we will assume without deciding that the officers' conduct violated Gomez-Velazco's right to counsel.

The question becomes whether Gomez-Velazco must show prejudice in order to prevail. The answer to that question requires a point of clarification as to the source of the right at issue. The Sixth Amendment does not afford a right to the assistance of counsel in immigration proceedings. *Hernandez-Gil v. Gonzales*, 476 F.3d 803, 806 (9th Cir. 2007). The right to be represented by counsel at one's own expense is protected as an incident of the right to a fair hearing under the Due Process Clause of the Fifth Amendment. *Biwot v. Gonzales*, 403 F.3d 1094, 1098–99 (9th Cir. 2005); *see also* 8 U.S.C. § 1228(b)(4)(B) ("the alien shall have the privilege of being represented (at no expense to the government) by such counsel, authorized to practice in such proceedings, as the alien shall choose"). Thus, an individual who asserts that he was denied the right to counsel in immigration proceedings is asserting that his right to due process was violated.

As a general rule, an individual may obtain relief for a due process violation only if he shows that the violation caused him prejudice, meaning the violation potentially affected the outcome of the immigration proceeding. *Hernandez-Gil*, 476 F.3d at 808; *Biwot*, 403 F.3d at 1100. That rule rests on the view that the results of a proceeding should not be overturned if the outcome would have been the same even without the violation. Gomez-Velazco contends that the rule should be different when a due process violation is predicated on denial of the right to counsel. In that context, he urges, prejudice should be conclusively presumed and automatic reversal should follow.

There is some support for the rule Gomez-Velazco advocates. In cases involving removal proceedings before an immigration judge, we have held that requiring an individual to proceed with the merits hearing without the assistance of counsel violates due process, absent a valid waiver of the right to counsel. *See, e.g.*, *Hernandez-Gil*, 476 F.3d at 806–08; *Tawadrus v. Ashcroft*, 364 F.3d 1099, 1103–05 (9th Cir. 2004). And in *Montes-Lopez v. Holder*, 694 F.3d 1085 (9th Cir. 2012), we carved out an exception to the general rule requiring a showing of prejudice. There we held that an individual who is wrongly denied the assistance of counsel at the merits hearing need not show prejudice in order to prevail. *Id*. at 1090. Prejudice in that context is conclusively presumed and automatic reversal is required.

The rule we adopted in *Montes-Lopez* is based in part on the practical difficulties one would face in trying to prove that the outcome of the merits hearing would have been different had counsel been able to assist. *Id.* at 1092. In most cases it would be next to impossible to determine what the evidentiary record would have looked like had counsel been

present. The same practical difficulties explain why, in the Sixth Amendment context, a showing of prejudice is not required when the defendant is denied counsel (or wrongly denied counsel of choice) throughout the entire criminal proceeding. *See United States v. Gonzalez-Lopez*, 548 U.S. 140, 148–50 (2006). In that context, too, it would usually be impossible to determine what different decisions counsel (or counsel of choice) might have made, and what impact those decisions might have had on the outcome of the proceeding. *Id.* at 150–51. Given "the difficulty of assessing the effect of the error," *id.* at 149 n.4, automatic reversal is required.

Even in the Sixth Amendment context, though, not all violations of the right to counsel are treated as structural errors mandating automatic reversal. If the right to counsel has been wrongly denied only at a discrete stage of the proceeding, and an assessment of the error's effect can readily be made, then prejudice must be found to warrant reversal. For example, the Supreme Court has held that denial of counsel at the preliminary hearing stage is subject to harmless error review rather than an automatic reversal rule. *Coleman v. Alabama*, 399 U.S. 1, 10–11 (1970). And when the government obtains evidence at certain pre-trial stages of the case in violation of the right to counsel, admission of that evidence at trial is also subject to harmless error review. *See, e.g.*, *Satterwhite v. Texas*, 486 U.S. 249, 258 (1988) (denial of right to counsel at court-ordered psychiatric examination); *Milton v. Wainwright*, 407 U.S. 371, 372 (1972) (denial of right to counsel during post-indictment interactions with undercover police officer); *United States v. Wade*, 388 U.S. 218, 242 (1967) (denial of right to counsel at pre-trial line-up).

In our view, the rationale supporting the automatic reversal rule does not extend to the circumstances we confront in this case. Gomez-Velazco was not denied the assistance of counsel throughout the entirety of the administrative removal process, which commences with service of the Notice of Intent to Issue a Final Administrative Removal Order and ends with execution of the order. He lacked counsel at one discrete stage of the process—the point of his initial interaction with DHS officers. That was, to be sure, an important stage because he had to decide whether to contest the charges against him and whether to request withholding of removal, decisions that turn on potentially complicated factual and legal issues which virtually all lay people need the assistance of counsel to analyze intelligently. *See* Koh, *supra*, 90 S. Cal. L. Rev. at 211–13.

Nonetheless, we think the effect of counsel's absence during the initial interaction with DHS officers can readily be assessed, at least in cases like this one, in which the individual does not waive the 14-day waiting period and is allowed to consult with counsel before the removal order is executed. In that scenario, we are not forced to speculate about the different decisions counsel might have made had she been present, for counsel can act on those decisions after issuance of the removal order and remedy any damage done by her client's un-counseled admissions or waivers.

Take the two most common admissions or waivers that occur. If the individual admits the allegations in the notice and concedes removability, as Gomez-Velazco did here, the lawyer can still file a response asserting any valid grounds for contesting removability within the ten-day period permitted under 8 C.F.R. § 238.1(c)(1). We doubt DHS would refuse to consider the response on the theory that the individual's

earlier un-counseled concession of removability is somehow irrevocable. But even if the agency took that dubious position, a reviewing court would be able to assess whether the grounds asserted raise a plausible basis for contesting removability, and thus could determine whether counsel's absence during the initial interaction with DHS officers caused prejudice. And if the individual waives the right to request withholding of removal despite fearing persecution or torture in the country to which he would be removed, the lawyer can still request a reasonable fear determination, since that does not occur until after issuance of the removal order in any event. § 238.1(f)(3).

In sum, we see no reason to conclusively presume prejudice when an individual is denied the right to counsel during his initial interaction with DHS officers, provided the individual is able to consult with counsel before the removal order is executed. In that scenario, we can determine what the evidentiary record would have looked like had the violation not occurred, unlike the scenario in which counsel is precluded from participating in the merits hearing before an immigration judge. And we can thus assess what prejudicial effect, if any, counsel's absence had on the outcome of the proceedings.

Having concluded that Gomez-Velazco must show prejudice to prevail, we turn to whether he has made that showing here. As just noted, he might have been able to show prejudice had he attempted to contest the facts rendering him removable yet been foreclosed from doing so by virtue of his earlier un-counseled admissions. But he has never attempted to contest the charges against him, even after having an opportunity to consult with counsel, so he cannot contend that his un-counseled admissions cost him the chance

to raise plausible grounds for contesting removal. Nor can he claim prejudice by virtue of his un-counseled waiver of the right to request withholding of removal, since he was ultimately given a reasonable fear interview and allowed to make the case that he should be granted withholding of removal.

Gomez-Velazco asserts only one other theory of prejudice, which relates to the recent denial of his U-visa application. He contends that if counsel had been present during his initial interaction with DHS officers, his attorney could have requested a stay of the proceedings and thereby prevented the removal order from being issued in the first place. He argues that he suffered prejudice because the very issuance of the removal order negatively influenced the agency's consideration of his U-visa application and contributed to the decision to deny it.

There are at least two flaws in this argument. The first is that Gomez-Velazco provides nothing to support his assertion that the mere issuance of a removal order negatively affects the agency's consideration of a U-visa application. We have found nothing in DHS regulations or policy guidance to suggest that is the case, and we know that issuance of a removal order does not preclude an individual from obtaining a U-visa. The agency's regulations specifically contemplate the granting of a U-visa application even after issuance of a removal order. They provide that upon approval of the application the removal order "will be deemed canceled by operation of law" as of the date of approval. 8 C.F.R. § 214.14(c)(5)(i); *see United States v. Cisneros-Rodriguez*, 813 F.3d 748, 761 (9th Cir. 2015).

The second flaw in Gomez-Velazco's argument is that the agency's written explanation for why it denied his U-visa application does not rely on issuance of the removal order as a negative factor. To be eligible for a U-visa, Gomez-Velazco needed to obtain a waiver of inadmissibility, and to obtain that he needed to persuade the agency that "it is in the public or national interest" to allow him to remain in the United States. 8 C.F.R. § 212.17(b)(1). The agency explained that it declined to grant a waiver of inadmissibility because his criminal record indicated that he posed a risk to public safety. In support of that conclusion, the agency cited Gomez-Velazco's conviction for second-degree rape, an especially serious offense because the victim was 13 years old. The agency also cited his multiple violations of the probationary conditions imposed for that conviction and his multiple arrests for other offenses. Given this record of criminal wrongdoing, the agency could not conclude that a favorable exercise of its discretion was warranted. That outcome is not surprising, as the agency's regulations provide that it will grant a waiver of inadmissibility to applicants convicted of violent or dangerous crimes only in "extraordinary circumstances." § 212.17(b)(2). Nothing in the agency's decision turned on the fact that a removal order had been issued.

*          *          *

In the circumstances of this case, Gomez-Velazco was required to show prejudice in order to prevail on his due process claim. Although he may have been improperly denied the right to counsel during his initial interaction with

DHS officers, he has made no showing that the denial of that right caused him any prejudice.

**PETITIONS FOR REVIEW DENIED.**

NAVARRO, Chief District Judge, dissenting:

I would grant the Petition for Review and vacate the Final Administrative Removal Order ("FARO") issued on June 12, 2014.

I would first make the distinct finding—as opposed to the majority's assumption—that Gomez-Velazco's right to counsel was violated. "Although there is no Sixth Amendment right to counsel in an immigration hearing, Congress has recognized it among the rights stemming from the Fifth Amendment guarantee of due process that adhere to individuals that are the subject of removal proceedings." *Tawadrus v. Ashcroft*, 364 F.3d 1099, 1103 (9th Cir. 2004) (citing *Rios-Berrios v. I.N.S.*, 776 F.2d 859, 862 (9th Cir. 1985)). While "[t]he right to counsel in immigration proceedings is rooted in the Due Process Clause," *Biwot v. Gonzales*, 403 F.3d 1094, 1098 (9th Cir. 2005), the right to counsel in expedited removal proceedings is also secured by statute. 8 U.S.C. § 1228(b)(4)(B) ("[T]he alien shall have the privilege of being represented (at no expense to the government) by such counsel, authorized to practice in such proceedings, as the alien shall choose."); 8 C.F.R. § 238.1(b)(2)(i) ("[The Notice of Intent] shall advise that the alien: has the privilege of being represented, at no expense to the government, by counsel of the alien's choosing, as long as counsel is authorized to practice in removal proceedings");

*see also* 8 C.F.R. § 238.1(b)(2)(iv) (requiring ICE to provide aliens facing expedited removal "with a list of available free legal services programs").

Moreover, expedited removal proceedings under § 1228 require "conformity with section 1229a" and the "privilege of being represented" is further codified in that section as well. *See* 8 U.S.C. § 1229a(b)(4)(A). This right to be represented at no cost to the government is also listed on the "Notice of Intent to Issue a FARO" under "Your Rights and Responsibilities." If the right to counsel under § 1228 is only for the noncitizen to be advised of the right to have counsel, with no practical effect, then it would be no right to counsel at all. *See Rios-Berrios*, 776 F.2d at 863 (explaining that the right to counsel must be respected in substance as well as in name).

Indeed, this Circuit has consistently emphasized the critical role of counsel in deportation proceedings. *See, e.g.*, *Reyes-Palacios v. I.N.S.*, 836 F.2d 1154, 1155 (9th Cir. 1988) ("The importance of counsel . . . can neither be overemphasized nor ignored."); *United States v. Cerda-Pena*, 799 F.2d 1374, 1377 n.3 (9th Cir. 1986) (referring to "an outright refusal to allow an alien the opportunity to obtain representation" as "an egregious violation of due process"). We have characterized the alien's right to counsel of choice as "fundamental" and have warned the agency not to treat it casually. *Rios-Berrios*, 776 F.2d at 863–64.

Here, the record clearly demonstrates that Gomez-Velazco asserted that he had counsel and wanted his counsel present. First, in Form I-213, ICE Officer Stewart explains that during the FARO proceedings, Gomez-Velazco "was unwilling to provide a sworn statement without an attorney

present." Second, on the "Record of Sworn Statement" dated June 12, 2014, the first question states, "Are you willing to answer my questions?" to which Gomez-Velazco answered: "I prefer not to until I talk to my attorney." DHS nevertheless proceeded with the expedited removal proceedings without first affording Gomez-Velazco the opportunity to notify and speak with his counsel as he requested. In doing so, DHS directly disregarded Gomez-Velazco's ability to exercise this fundamental right.

Having found that Gomez-Velazco's right to counsel was violated, I would then find that under *Montes-Lopez v. Holder*, 694 F.3d 1085 (9th Cir. 2012), no prejudice is required to vacate the FARO. The *Montes-Lopez* court held "an alien who shows that he has been denied the statutory right to be represented by counsel in an immigration proceeding need not also show that he was prejudiced by the absence of the attorney." 694 F.3d at 1093–94. In support, the court stated that "the absence of counsel can change an alien's strategic decisions, prevent him or her from making potentially-meritorious legal arguments, and limit the evidence the alien is able to include in the record." *Id.* at 1092.

The majority here distinguishes *Montes-Lopez* by a distinction without a difference. First, the majority regards *Montes-Lopez* as "an exception to the general rule requiring a showing of prejudice;" however, prior to *Montes-Lopez*, there was no general rule that required a showing of prejudice—a fact that *Montes-Lopez*, *Hernandez-Gil*, and *Biwot*, the cases the majority relies so heavily on, all specifically identify. *Id.* at 1090 ("We have never decided, however, whether prejudice is an element of a claim that counsel has been denied in an immigration proceeding.");

*Hernandez-Gil v. Gonzales*, 476 F.3d 803, 808 (9th Cir. 2007) ("Because we determine that Hernandez-Gil has shown that he was prejudiced by the denial of his statutory right to counsel 'we again leave unanswered the question whether a petitioner must show prejudice when he has been denied the right to counsel in removal proceedings.'") (citing *Biwot*, 403 F.3d at 1100).

Second, the right to counsel is substantively the same under both the § 1228 expedited removal proceeding before a DHS deciding officer, as used here, and the § 1229 proceeding before the immigration judge, as in *Montes-Lopez*.[1] *Compare* § 1228(b)(4)(B) *with* § 1229(b)(1); *see also United States v. Peralta-Sanchez*, 847 F.3d 1124, 1130 (9th Cir. 2017) (emphasizing the similarity of §§ 1228 and 1229 in the right to counsel context). *Montes-Lopez*'s holding refers to "an immigration proceeding" without differentiating between a proceeding before an immigration judge and a DHS deciding officer. *Montes-Lopez*, 694 F.3d at 1093–94.

Notably, the *Montes-Lopez* court purposefully distinguished pure immigration proceedings from collateral attacks on a removal order in a § 1326 illegal reentry criminal case, the latter of which requires prejudice specifically because of "the limitations on criminal defendants' right to collaterally attack the result of a prior proceeding." *Montes-Lopez*, 694 F.3d at 1093; *see also Villa-Anguiano v. Holder*, 727 F.3d 873, 876 n.1 (9th Cir. 2013) (contrasting the § 1326 illegal reentry collateral attack standard under *Reyes-Bonilla* with the immigration proceedings petition for review standard

---

[1] The Government decides under which process to pursue deportation by issuing either a Notice of Intent to Issue a FARO under § 1228 or Notice to Appear under § 1229.

under *Montes-Lopez*).  The *Montes-Lopez* court compared the collateral attack versus petition for review in the immigration context to the difference between a criminal collateral attack and a direct appeal: "A criminal defendant who alleges ineffective assistance of counsel must generally show prejudice, *Smith v. Mahoney*, 611 F.3d 978, 1001 (9th Cir. 2010), but a defendant who has been denied counsel need not. *Campbell v. Rice*, 408 F.3d 1166, 1176 (9th Cir. 2005)." 694 F.3d at 1092.

Deprivation of counsel is per se prejudicial. *See Cerda-Pena*, 799 F.2d at 1377 n.3 ("[A]n outright refusal to allow an alien the opportunity to obtain representation may be such an egregious violation of due process so as not to require any further showing of prejudice"); *Garcia-Guzman v. Reno*, 65 F. Supp. 2d 1077, 1087 (N.D. Cal. 1999) (explaining that "*Cerda-Pena* therefore suggests that if the violation of the right to counsel is sufficiently egregious—i.e., a clear denial of representation or outright refusal to permit an alien to obtain representation—prejudice needn't be shown.").

The majority attempts to downplay the inherent prejudice of this situation by comparing it to discrete stages of a criminal proceeding, such as a preliminary hearing, a court-ordered psychiatric examination, post-indictment interactions with undercover police officers, and pre-trial line-ups. However, none of these situations are comparable to the instant case.  Here, Gomez-Velazco was in custody by DHS when he asked for an attorney—a situation that, in a non-immigration case, would normally mandate an attorney as soon as a defendant requests one.

Furthermore, in drawing comparisons to these Sixth Amendment situations, the majority attempts to illustrate how

the standard in those cases are only "subject to harmless error review rather than an automatic reversal rule," and the majority concludes that because this is a similar discrete stage, prejudice is required rather than presumed. However, in arguing this, the majority once again completely disregards *Montes-Lopez*. There, the court held that "[w]hen this court concludes that an agency has not correctly applied controlling law, it must typically remand, even if we think the error was likely harmless." *Montes-Lopez*, 694 F.3d at 1092 (citing *INS v. Orlando Ventura*, 537 U.S. 12, 16–17 (2002)). Importantly, *Montes-Lopez* adopts the reasoning of the Second Circuit, which "declined to add a prejudice requirement to this rule because [the court] reasoned that automatic reversal upon violation of such a regulation would encourage agency compliance with its own rules and serve the interests of judicial economy." *Id.* at 1091 (citing *Montilla v. INS*, 926 F.2d 162, 169 (2d Cir. 1991)). We must recognize that in mandating automatic reversal, not only will we continue to protect this right to counsel, but also we will better hold these agencies accountable in their actions and conduct by enforcing their own regulations more strictly upon them. In holding that this situation is akin to a harmless error review, the majority disregards *Montes-Lopez*'s holding and downplays the right to counsel.

The majority attempts to distinguish *Montes-Lopez* by stating that it is different than the instant case because it is "based in part on the practical difficulties one would face in trying to prove that the outcome of the merits hearing would have been different had counsel been able to assist." The majority reasons that *Montes-Lopez* differs because "Gomez-Velazco was not denied the assistance of counsel throughout the entirety of the administrative removal process" but that he "lacked counsel at one discrete stage of the process."

To carve out such a nuanced distinction undermines the fundamental nature of the right to counsel. *See, e.g.*, *Hernandez-Gil*, 476 F.3d at 806 ("The high stakes of a removal proceeding and the maze of immigration rules and regulations make evident the necessity of the right to counsel."); *Montes-Lopez*, 694 F.3d at 1091 ("No showing of prejudice is required, however, when a rule is 'intended primarily to confer important procedural benefits upon indiv[i]duals'' or 'when alleged regulatory violations implicate fundamental statutory or constitutional rights.'") (quoting *Leslie v. Attorney Gen.*, 611 F.3d 171 (3d Cir.2010)). Likewise, to permit an agency to continue to ignore its own regulations undermines the fundamental nature of the right to counsel. Finally, to ignore established precedent in favor of the majority's new exception undermines the fundamental nature of the right to counsel. Accordingly, I would vacate the FARO because Gomez-Velazco established a right to counsel due process violation and therefore need not show prejudice.

Even if prejudice were required, however, it should be assessed under the "plausibility" standard set forth by *United States v. Cisneros-Rodriguez*, 813 F.3d 748, 760 (9th Cir. 2015): "[W]hether the defendant had identified a form of relief it was plausible he would have obtained absent the due process violation." In *Cisneros-Rodriguez*, the defendant argued that "had she obtained counsel [during her predicate § 1228 proceeding], it is plausible that she would have applied for and obtained a U-visa." *Id.* at 753. The court agreed that because she demonstrated prima facie U-Visa eligibility, it was plausible that she would have obtained a U-Visa had she applied for one at the time of her original § 1228 proceeding. *Id.* at 761. This finding was made despite the

fact that the defendant later applied for a U-Visa and was rejected. *Id.* at 762.

Here, the record demonstrates that Officer Stewart—the arresting ICE officer who provided the evidence to Deciding Officer Elizabeth C. Godfrey for the issuance of the FARO—knew that Gomez-Velazco was represented by counsel and that Gomez-Velazco had a pending U-Visa application. When Officer Stewart nevertheless chose to arrest Gomez-Velazco and continue with the § 1228 proceeding without allowing him to consult with his attorney, Gomez-Velazco was prejudiced more than the defendant in *Cisneros-Rodriguez* because he had a plausible *and pending* U-Visa application. As such, I cannot agree with the majority that Gomez-Velazco failed to demonstrate sufficient prejudice under *Cisneros-Rodriguez*.

Ultimately, even without a finding of prejudice, the majority's decision to deny Gomez-Velazco's petition for review dilutes the fundamental right to counsel and completely ignores indistinguishable precedent. *See Hernandez v. Holder*, 545 Fed. Appx. 710, 713 (9th Cir. 2013) (Ikuta, J., concurring) (unpublished opinion) (stating disagreement with *Montes-Lopez* while still acknowledging that the Ninth Circuit is bound by its decision). Accordingly, I must respectfully dissent.